0653

COALITION FOR THE ABOLITION OF MARIJUANA PROHIBITION, Paul D. Cornwell, II, Plaintiffs-Appellants,

v.

CITY OF ATLANTA, Defendant-Appellee.

No. 99-11385.

United States Court of Appeals,

Eleventh Circuit.

July 27, 2000.

Appeal from the United States District Court for the Northern District of Georgia.(No. 96-00407-CV-1-JEC), Julie E. Carnes, Judge.

Before COX, BIRCH and BARKETT, Circuit Judges.

BIRCH, Circuit Judge:

The Coalition for the Abolition of Marijuana Prohibition ("CAMP") and its national coordinator, Paul D. Cornwell, II, (collectively, the appellants) appeal the district court's judgment finding the City of Atlanta Outdoor Festivals Ordinance of 1994, codified at Atlanta. Ga., Code §§ 138-186 through 138-208 (1994), (the "1994 Festival Ordinance"), *repealed by* Atlanta Outdoor Festivals Ordinance of 2000, Atlanta, Ga.Code § 99-O-1020 (2000), to be, in part, facially unconstitutional and enjoining the future application of those unconstitutional portions of the ordinance. The appellants appeal the district court's determination that portions of the festival ordinance were constitutional. For the reasons that follow, we AFFIRM the holding of the district court.

## BACKGROUND

CAMP is a non-profit organization focused primarily on forming alliances and associating with other groups concerned with marijuana issues. Additionally, CAMP sponsors the Great Atlanta Pot Festival (the "Pot Festival"), a direct action event advocating changes in the laws governing marijuana.

CAMP held the Pot Festival in Atlanta's Piedmont Park from 1990 through 1995. Prior to 1995, the appellants erected a stage with a cover, stage lights and barricades for the use of speakers and musical performers during the Pot Festival. During the Pot Festival, CAMP distributed printed information regarding the uses of marijuana and the hemp plant and advocating the repeal of all laws prohibiting the use of marijuana. CAMP also sold products, such as t-shirts, bearing messages about marijuana. Other vendors sold food and drinks.

In 1995, the City of Atlanta requested that CAMP apply for an outdoor festival permit.[1] The City explained that, because the Pot Festival had evolved into a larger, more commercial event, attracting approximately 30,000 attendees and featuring concerts, political speeches, and vendors selling food and merchandise, it now fell within the 1994 Festival Ordinance's definition of an "outdoor festival."[2] When the appellants complied with the City's request and applied for a festival permit, their application was denied because the City determined that " 'the previous history of this event indicates to a reasonable certainty that public safety would be compromised substantially.' "  R2-37-5 (quoting Labovitz Dep., Ex. 1, Letter of February 14, 1995, from Steven Labovitz to Paul Cornwell at 1). The mayor's chief of staff explained that

---

[1]The City had determined in 1991 that the Pot Festival should have been treated as an outdoor festival within the scope of the festival ordinance and requested that CAMP apply for a festival permit. CAMP refused and brought the matter before a Fulton County Court. That court allowed the event to proceed without a festival permit. The City did not request that CAMP apply for a festival permit again until 1995.

[2]The 1994 Festival Ordinance defined "outdoor festival" under § 138-187 as the following:

> an outdoor public celebration or gathering which involves the use either of public parks or public streets and which includes entertainment, dancing, music, dramatic productions, art exhibits, parades or the sale of merchandise, food or alcohol or any combination of such and which of necessity requires for its successful execution the provision and coordination of municipal services to a degree significantly over and above that which the city routinely provides under ordinary everyday circumstances. The definition of outdoor festival does not include events which are solely parades, footraces or political demonstrations unless such parade, footrace or political demonstration is proposed as an integral part of a larger festival.

R1-3-Ex. A at 1-2.

the permit was denied based on the recommendation of the Atlanta Police Department. The police department had estimated that in 1994 at least half of the Pot Festival attendees openly smoked marijuana in blatant defiance of the law and therefore, "[i]n the opinion of police officials monitoring this event, any attempt to enforce the law on such an occasion would require unusually large numbers of police officers and would be likely to provoke a civil disturbance." *Id.*

Upon denial of their application for a festival permit, the appellants exhausted the administrative appeals process defined in § 138-208 of the 1994 Festival Ordinance. The appellants then filed for a preliminary injunction, requiring the City of Atlanta to grant them a festival permit. The district court determined that the appellants' First Amendment rights were not being infringed because they could hold a political demonstration and concert without a festival permit. Accordingly, the district court denied the request for a preliminary injunction.

After the 1995 Pot Festival, the appellants filed suit alleging that the 1994 Festival Ordinance was unconstitutional on its face and as applied to the Pot Festival. Specifically, the appellants argued that the 1994 Festival Ordinance was unconstitutional on its face because it provided unfettered discretion to the mayor's chief of staff and other public officials when deciding whether to issue a festival permit. After conducting a two-day trial on the issues, the district court held that "while parts of the Festival Ordinance pass constitutional muster, other parts, on their face, constitute an impermissible prior restraint on First Amendment expression." *Id.* at 6-7.

The district court determined that the 1994 Festival Ordinance was a prior restraint on protected speech, but was content-neutral on its face. The district court then assessed each section of the 1994 Festival Ordinance individually to determine whether it passed constitutional muster. First, the district court found that the definition of an outdoor festival found in § 138-187 did not grant unfettered discretion, was narrowly tailored to serve a significant government interest, and, therefore, was constitutional. Nonetheless, the district

3

court ordered the City "to set out more specifically those attributes that would bring an event within the definition of outdoor festival" when revising the 1994 Festival Ordinance. *Id.* at 26 n. 13.

The district court next considered § 138-203 of the 1994 Festival Ordinance[3] and determined that certain provisions within that section lacked sufficiently objective and definite standards to limit the discretion of the chief of staff when issuing festival permits. Thus, the district court concluded that "[b]y allowing the individual charged with enforcing the Festival Ordinance to balance or assign various weights to this list of subjective, imprecise criteria, § 138-203 fails to restrict the decision-maker's discretion and thus leaves open the door to unconstitutional, content based discrimination." *Id.* at 33. Particularly, the district

---

[3]Section 138-203 of the 1994 Festival Ordinance provides:

(a) The chief of staff shall be charged with the responsibility of determining whether or not a particular applicant shall be granted an outdoor festival permit pursuant to this article, in consultation with the special events coordinator.

(b) In determining whether to grant or deny a particular permit application, the chief of staff shall take into account the effect the proposed special events will have upon the environment and the public health and safety. The chief of staff shall also take into account the frequency with which such events are held and the convenience of the public in relation thereto. Permits granted pursuant to this article shall not authorize more than ten calendar days of special events for any particular applicant per calendar year.

(c) In addition to the criteria in subsections (a) and (b) of this section, in making the decision whether to grant the permit, the chief of staff shall take into account whether:

(1)     The history, if any, of the particular applicants, insofar as it can be determined, indicates their capability or incapability of executing the planned festival;

(2)     Any inconvenience which may be suffered by the general public is outweighed by the potential benefit to the community as a whole;

(3)     Budgetary considerations at the time of the application create such a heavy burden upon the city's financial resources that it would not be practical to hold the proposed festival at the time requested;

(4)     The holding of the festival as planned would create an undue burden upon the personnel resources of the city;  and

(5)     The public safety would be compromised substantially.

Atlanta City Code, § 138-203;  R1-2-Ex.A at 3.

court noted that the following subsections of § 138-203 set forth criteria which allow the chief of staff to exercise an impermissible degree of discretion when approving applications for outdoor festival permits: § 138-203(b) requires the chief of staff to "take into account the effect the proposed special events will have upon the environment and the public health and safety" and provides for balancing "the convenience of the public in relation to the frequency with which an event is held," § 138-203(c)(2) requires the chief of staff to consider whether "[a]ny inconvenience which may be suffered by the general public is outweighed by the potential benefit to the community as a whole," and § 138-203(c)(5) provides for consideration of whether "[t]he public safety would be compromised substantially." *Id.* at 29-30.

The district court also considered the criteria in § 138-203(c)(1) requiring consideration of whether "[t]he history, if any, of the particular applicants, insofar as it can be determined, indicates their capability or incapability of executing the planned festival." R2-37-31. The district court found that "it is a much closer question whether this provision fails to provide definite and precise standards on which to condition the grant of a festival permit." *Id.* Therefore, it "d[id] not determine ... whether or not this provision is unconstitutionally vague," but, nonetheless, suggested that the City should make this provision more precise when it revised the 1994 Festival Ordinance. *Id.* at 32.

Turning to §§ 138-204(a) and (b), the district court found that the requirement that the chief of staff "deny an application if the applicant 'proposes to limit the use of public street by pedestrians using the streets to move from location to location or if the applicant proposes to limit the use of public parks when use of the parks by the general public shall not unreasonably disturb the activities of the planned festival,' " *id.* at 34, was "neither overbroad nor vague; indeed, its permit requirement is linked to a practical justification and is narrowly tailored to meet this justification." *Id.* at 35. The district court also noted that the section's provision granting the chief of staff authority to regulate street closings applied only after an applicant's permit had been approved and, thus was not unconstitutional on its face. Therefore, the district court found that § 138-204 passed constitutional muster.

The district court then analyzed § 138-205 which requires an applicant to pay a permit fee and sanitation deposit in order to obtain an outdoor festival permit. These fees are calculated based on a sliding scale utilizing the applicant's estimate of the anticipated attendance and the city's estimate of the extra personnel hours it will expend to accommodate the festival. Section 138-205 also requires the applicant to reimburse the City for the cost of excess man hours and services actually provided by the city in support of the event which exceed those covered by the initial permit fee. The district court concluded that "the imposition of fees by § 138-205 does not unconstitutionally burden the free expression of speech. A municipality can impose a reasonable fee on certain kinds of expressive activities to recover its costs, so long as the charge imposed does not exceed the administrative costs of regulating the protected activity." *Id.* at 36. While the district court found that § 138-205's fee schedule was "reasonable and content neutral," *id.* at 38, it did caution the city that requiring the chief of police to approve the applicant's security plan for the event, including the number of off-duty police officers the applicant will hire to provide security for the event, "could confer improper discretion to the Police Department to determine the amount of police support a festival sponsor must retain prior to the event," *id.* at 40 n. 19. The district court "advise[d] the City to address in greater detail the content-neutral bases by which the security supervisor and a festival sponsor should structure their discussions about the scope of security required for an event, if and when the City re-evaluates the 1994 Festival Ordinance." *Id.* at 40-41 n. 19.

Finally, the district court determined that § 138-208 was facially unconstitutional. This section requires that the mayor make a final decision regarding the grant of a festival permit to an applicant at least five days before the event's scheduled date. The district court found that this deadline allowed the City to effectively " 'kill' the event by its inaction on the administrative appeal." *Id.* at 43. Therefore, the district court concluded that the administrative appeal mechanism provided by § 138-208 does not provide adequate procedural safeguards and does not guarantee prompt, final judicial review.

6

The district court also considered whether the 1994 Festival Ordinance had been unconstitutionally applied to the Pot Festival, but determined that the question was moot because the court was striking down the provisions in question as facially unconstitutional. Finally, the district court issued a permanent injunction preventing the City from applying those provisions of the 1994 Festival Ordinance which it had found to be unconstitutional. The injunction allowed the city to continue to use those portions of the 1994 Festival Ordinance that remained valid; however, because the ordinance remaining after striking the unconstitutional portions was jumbled and difficult to understand, the district court ordered the City to enact a new festival ordinance prior to December 31, 1999. This deadline was subsequently extended through March 1, 2000.

Prior to the enactment of a new festival ordinance, the appellants filed this appeal. They contest the district court's conclusion that portions of the 1994 Festival Ordinance are constitutional, specifically sections 138-187, 138-204, and 138-205.[4] The appellants argue that the 1994 Festival Ordinance is content-based, does not allow effective access to public fora, and is not the least restrictive means for regulating the appellant's First Amendment conduct. The appellants also argue that the permit fees required by the 1994 Festival Ordinance are not nominal and are manipulated to accomplish content-based restriction of First Amendment activity. Finally, the appellants contend that the district court erred by failing to exercise supplementary jurisdiction over their Georgia Constitutional claims.

---

[4]The district court refused to determine whether § 138-203(c)(1) was "unconstitutionally vague." R2-37-32. However, it also did not specifically find that subsection 138-203(c)(1) was constitutional. Therefore, we do not include this subsection as a part of the appellant's challenge to the district court's determination that portions of the 1994 Festival Ordinance passed constitutional muster. Accordingly, we do not consider whether subsection 138-203(c)(1), as revised, is constitutional. Similarly, the district court cautioned the City that § 138-205's requirement regarding the use of off-duty police officers as a part of the festival applicants' security could confer improper discretion of the Police Department to determine the amount of police support required for a festival; however, the appellants do not raise this portion of the ordinance on appeal. Therefore, we do not consider the revised requirements for a security plan in the 2000 Festival Ordinance and express no opinion regarding their constitutionality. We leave it to the appellants, if they so desire, to challenge these provisions in the district court.

While this appeal was pending, the Mayor of Atlanta, on March 9, 2000, signed a new outdoor festival ordinance, Ordinance Number 99-O-1040. *See* Letter Brief of the Defendant-Appellee dated March 31, 2000 (with copy of Ordinance Number 99-O-1040).[5] This new ordinance, styled the Atlanta Outdoor Festival Ordinance 2000 (the "2000 Festival Ordinance"), repealed the 1994 Festival Ordinance and purported to correct those portions of it that the district court found unconstitutional and make clearer the remaining portions of the festival ordinance.

## DISCUSSION

### I. JUSTICIABILITY

As an initial matter we must address the question of justiciability. Article III of the Constitution requires an actual case or controversy to support the exercise of judicial power. "Three strands of justiciability doctrine—standing, ripeness, and mootness—play an important role in the determination of whether the plaintiff-appellants' case against the [City] presents an Article III case or controversy." *Socialist Workers Party v. Leahy,* 145 F.3d 1240, 1244 (11th Cir.1998).

### A. Standing

Citing *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 755-56, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988) and *United States v. Gilbert,* 130 F.3d 1458, 1462 (11th Cir.1997), the district court found that the appellants had standing to bring a facial challenge against the 1994 Festival Ordinance because they were subject to the licensing ordinance, they alleged that it provided the government unbridled discretion, and the ordinance could lead to content-based discrimination of constitutionally protected speech. Similarly, we agree with the district court that the appellants have proper standing to launch a facial challenge against the 2000 Festival Ordinance because the appellants seek to engage in constitutionally protected speech that the 2000 Festival Ordinance attempts to restrict. *See Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 504, 105 S.Ct. 2794, 2802, 86 L.Ed.2d 394 (1985).

---

[5]Hereinafter, we will cite to the document as Ordinance No. 99-O-1040.

B.      *Mootness*

There must be a "present, live controversy in order to 'avoid advisory opinions on abstract propositions of law.' " *Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater ("Church of Scientology I")*, 777 F.2d 598, 604 (11th Cir.1985) (quoting *Hall v. Beals,* 396 U.S. 45, 48, 90 S.Ct. 200, 201-02, 24 L.Ed.2d 214 (1969) (per curiam)).  " '[W]hen the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome,' " the case has become moot.  *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (quoting *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969)).  As the Supreme Court recently noted, "[t]he underlying concern is that, when the challenged conduct ceases such that ' "there is no reasonable expectation that the wrong will be repeated," ' then it becomes impossible for the court to grant ' "any effectual relief whatever" to [the] prevailing party.' " *City of Erie v. Pap's A.M,* --- U.S. ----, 120 S.Ct. 1382, 1390, 146 L.Ed.2d 265 (2000) (citations omitted) (alteration in original).  When a case has become moot, we do not consider the merits presented, but instead vacate the judgments below with directions to dismiss even if a controversy did exist at the time the district court rendered its decision. *See United States v. Munsingwear, Inc.,* 340 U.S. 36, 39-40, 71 S.Ct. 104, 106-07, 95 L.Ed. 36 (1950).

When a subsequent law brings the existing controversy to an end " 'the case becomes moot and should be treated accordingly.' " *Church of Scientology I,* 777 F.2d at 605 (concluding that the issue of an ordinance's validity was moot when the ordinance had been repealed by the enactment of new ordinance prior to the district court's consideration of the challenged, repealed ordinance and the district court reviewed the repealed ordinance rather than the newly enacted ordinance) (quoting *United States v. Alaska S.S. Co.,* 253 U.S. 113, 116, 40 S.Ct. 448, 449, 64 L.Ed. 808 (1920)).[6]  Generally, when an ordinance is repealed any

---

[6]We note that the considerations that compelled our conclusion that the case in *Church of Scientology I* was moot, *see* 777 F.2d at 604-06, are not present in this case.  In *Church of Scientology I* the entire challenged ordinance was repealed and replaced with a new ordinance prior to consideration by the district court.  Despite receiving timely notice of this change, the district court proceeded to declare the repealed ordinance unconstitutional and enjoined its enforcement.  Therefore, we determined that the issue of any

9

challenges to the constitutionality of that ordinance become moot. *See Church Scientology Flag Serv., Org., Inc. v. City of Clearwater* ("*Church of Scientology II"*), 2 F.3d 1509, 1511 (11th Cir.1993) (explaining that we vacated a district court's order concluding that a former municipal ordinance was facially unconstitutional and enjoining its enforcement because it analyzed only the prior ordinance, which had been repealed and replaced by a currently effective ordinance). Nonetheless, when an ordinance is repealed by the enactment of a superseding statute, then the "superseding statute or regulation moots a case only to the extent that it removes challenged features of the prior law. To the extent that those features remain in place, and changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case its not moot." *Naturist Soc'y, Inc. v. Fillyaw,* 958 F.2d 1515, 1520 (11th Cir.1992) (holding that amendments to challenged regulations did not moot the plaintiff's request for injunctive relief). *Accord Northeastern Fla. Chapter of Associated Gen. Contractors of America v. City of Jacksonville, Fla.,* 508 U.S. 656, 661-62, 113 S.Ct. 2297, 2300-01, 124 L.Ed.2d 586 (1993) (holding that repeal of a challenged ordinance and enactment of a replacement statute after the Supreme Court granted certiorari, but before it issued a decision did not render the case moot because the new statute disadvantaged the plaintiffs "in the same fundamental way").[7] Therefore, in order to determine whether the controversy presented on appeal is moot, we must " 'stop, look, and listen' to determine the impact of changes in the law." *Naturist Soc'y, Inc.,* 958 F.2d at 1520 (quoting *Kremens v. Bartley,* 431 U.S. 119, 135, 97 S.Ct. 1709, 1718, 52 L.Ed.2d 184 (1977)).

---

repealed ordinance's constitutionality was moot at the time that the district court considered it. We noted that "[t]he proper course of action would have been to allow the plaintiffs to amend their complaints and proceed to litigate the ordinance then in effect." *Id.* at 605-06. *See also id.* at 606 n. 22 (noting that "[t]here are numerous cases illustrating the principle that where a challenged ordinance is amended during litigation the appropriate course is to proceed to a consideration of the amended ordinance"). In this case, by contrast, the challenged ordinance was not replaced until after the district court issued its order, and the new ordinance maintains, in substantial part, those portions of the ordinance challenged on appeal by the plaintiff.

[7]Hereinafter, we will refer to this case as *Northeastern Fla. Chapter.*

Here, the 1994 Festival Ordinance has been repealed by the enactment of the 2000 Festival Ordinance. Accordingly, we must review the 2000 Festival Ordinance to ascertain whether it " 'satisfies all the principles sought in an attack on the prior statute.' " *Naturist Soc'y, Inc.,* 958 F.2d at 1520 (quoting *Johnson v. State,* 586 F.2d 387, 388 (5th Cir.1978)). If the 2000 Festival Ordinance "leaves objectionable features of the prior law substantially undisturbed, the case is not moot." *Id.* Additionally, we must determine whether any of the challenged portions of the statute have been " 'sufficiently altered so as to present a substantially different controversy from the one the District Court originally decided.' " *Northeastern Fla. Chapter,* 508 U.S. at 662 n. 3, 113 S.Ct. at 2301 n. 3 (quoting *id.* at 671, 113 S.Ct. at 2306 (O'Connor, J. dissenting) (agreeing that when the challenged statute is repealed but replaced by new legislation the analysis requires the court to consider whether the changes in the statute sufficiently alter the challenged portions of the ordinance so as to render the case moot, but disagreeing with the majority regarding the materiality of the changes to the challenged ordinance)).[8] In order for the alterations to the 1994 Festival Ordinance to satisfy this requirement and moot the issues presented on appeal the "gravamen of petitioner's complaint" must have been changed in some fundamental respect. *Northeastern Fla. Chapter,* 508 U.S. at 662, 113 S.Ct. at 2301 (reviewing a decision by this court where the City defendant repealed the challenged ordinance and replaced it with a new ordinance while the appeal was pending before the Supreme Court and noting that, although the new ordinance differed from the repealed ordinance in three principal respects the case was not moot).

---

[8]The concerns Justice O'Connor voiced in her dissent in *Northeastern Fla. Chapter* regarding the repeal of the challenged ordinance and enactment of new legislation are not applicable here. Justice O'Connor asserted that the majority should have found the controversy moot because when a statute which has been declared *invalid* by a lower court has been replaced with more narrowly drawn legislation and the plaintiff seeks only prospective relief, then an appellate court could not be certain how the statutory changes would affect the plaintiff's claims and while "[t]he new law ultimately may suffer from the same legal defect as the old, ... the statute may be sufficiently altered so as to present a substantially different controversy." *Northeastern Fla. Chapter,* 508 U.S. at 672-73, 113 S.Ct. at 2306-07 (O'Connor, J. dissenting). In this case, we are only dealing with portions of the 1994 Festival Ordinance that were declared *valid* by the district court. Therefore, any minor alteration of these portions of the 1994 Festival Ordinance which may slightly narrow the scope of the 2000 Festival Ordinance, do not alter the controversy from that which the district court originally considered. *Compare* Atlanta Outdoor Festival Ordinance of 1994, Atlanta, Ga., Code §§ 138-187—138-208 (1994) *with* Atlanta Outdoor Festival Ordinance of 2000, Ordinance No. 99-O-1040.

11

The Supreme Court explained its holding regarding the repeal of challenged statutory language set forth in *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 1074-75, 71 L.Ed.2d 152 (1982) (holding that a government defendant's repeal of objectionable language from a challenged ordinance does not render the case moot because the defendant's "repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated") as follows:

> This is an a fortiori case. There is no mere risk that Jacksonville will repeat its allegedly wrongful conduct; it has already done so. Nor does it matter that the new ordinance differs in certain respects from the old one. *City of Mesquite* does not stand for the proposition that it is only the possibility that the selfsame statute will be enacted that prevents a case from being moot; if that were the rule, a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect. The gravamen of petitioner's complaint is that its members are disadvantaged in their efforts.... The new ordinance may disadvantage them to a lesser degree than the old one, but ... it disadvantages them in the same fundamental way.

*Id.* at 662, 113 S.Ct. at 2301. Therefore, we must determine if the changes enacted in the 2000 Festival Ordinance alter the appellants' argument that the ordinance is content-based, is not narrowly-tailored to serve a significant government interest, and imposes fees on expression of protected speech which are more than nominal and manipulated according to the content of the speech.[9]

In order to make this assessment, we must review the portions of the 1994 Festival Ordinance challenged on appeal to determine whether they have been substantially altered in the 2000 Festival Ordinance. The City does not suggest that the portions of the 1994 Festival Ordinance which the district court found to be constitutional have been materially changed or corrected in the 2000 Festival Ordinance.

---

[9]The City contends that this appeal is moot because there is no reasonable expectation of recurring constitutional violations because the district court's final order prevents enforcement of the unconstitutional portions of the 1994 Festival Ordinance, the 2000 Festival Ordinance does not contain the unconstitutional language, and there is no reason to expect the City to reinsert the unconstitutional language in the 2000 Festival Ordinance. This argument misconstrues the issues presented on appeal. *The appellants do not challenge the district court's findings regarding those portions of the 1994 Festival Ordinance which it found to be unconstitutional. Rather, the appellants argue that the district court erred in finding that some portions of the 1994 Festival Ordinance did pass constitutional muster.* As such, the appellants specifically challenge the district court's finding that the 1994 Festival Ordinance was content neutral, as well as the conclusion that §§ 138-187, 138-204, and 138-205 were constitutional.

12

Likewise, our review of the 2000 Festival Ordinance indicates that the portions of the 1994 Festival Ordinance which are challenged on appeal have not been sufficiently altered so as to eliminate the issues raised. *Compare* Atlanta Outdoor Festival Ordinance of 1994, Atlanta, Ga., Code §§ 138-187-138-208 (1994) *with* Atlanta Outdoor Festival Ordinance of 2000, Ordinance No. 99-O-1040.[10] Other than changes

_____

[10]The following "red-lined" version of the 2000 Festival Ordinance provides a comparison of the challenged portions of the 1994 Festival Ordinance and the 2000 Festival Ordinance. Those portions of the 1994 Ordinance which have been deleted from the 2000 Festival Ordinance have been struck out and language added in the 2000 Festival ordinance has been underlined.

Section 138-187. Definitions.

*Extra personnel hours* means the total of %(the number of%( all hours worked by all city employees in the particular departments or areas under consideration for classification purposes in connection with the production of the %(special events in question%( *festival which is the subject of the application,* to the extent that such hours exceed the total number of hours which would have been worked by those same city employees in the same location had the festival not taken place. Excluded from this definition are the personnel hours worked by the %(s%(*S*pecial %(e%(*E*vents %(c%(*C*oordinator %(or by a city employee designated to fulfill the function of special events coordinator on any particular occasion%(, *the personnel hours worked by any person of the level of bureau director or higher, and the personnel hours worked by police officers.*

*Outdoor Festival* means an outdoor public celebration or gathering which involves *either* the use either of public parks *belonging to the City* or public streets and which includes entertainment, dancing, music, dramatic productions, art exhibitions, parades or the sale of merchandise, food%(,%( or alcohol, or any combination of %(such%( *the foregoing, and which requires the erection of stages, barricades, utility poles, booths, tents, or other temporary structures, or the use of parked vehicles or of permanent structures,* and which of necessity requires for its successful execution the provision and coordination of municipal services to a degree significantly over and above that which the city routinely provides under ordinary everyday circumstances. The definition of outdoor festival does not include events which are solely parades, %(footraces or political demonstrations%( unless such parade%(, footrace or political demonstration%( is proposed as an integral part of a %(larger%( *broader* outdoor festival. *Also excluded from the definition of "outdoor festival" herein is any event with a scheduled duration of three (3) hours or less.*

Section 138-204. Classification and approval

(a) After reviewing the comments of all the %(other%( departments %(and%( %(the%( *or* bureau*s* %(of buildings%( *submitting them,* the %(c%(*C*hief of %(s%(*S*taff shall approve, *deny, approve with modifications or upon conditions as set forth in Section 138-203.* %(or%( %(reject the application for the permit for an outdoor festival.%( If the application is approved, the %(c%(*C*hief of %(s%(*S*taff, in consultation with the heads of affected departments, shall also impose any necessary restrictions or conditions *as to time, manner and place* to be observed in accordance with the public safety, environmental and administrative considerations %(involved in the particular

13

application%( *which appear based upon the application, provided that such considerations shall not include any consideration of the content of any speech or message which may be conveyed by such festival, nor by any considerations concerning the identity of associational relationships of the applicant, nor to any assumptions or predictions as to the amount of hostility which may be aroused in the public by the content of speech or message conveyed by the festival.* [Beginning of a new paragraph in the 2000 Festival Ordinance] Except as provided in subsection (b) of this section, under no circumstances shall the %(c%(*C*hief of %(s%(*S*taff approve %(the%( *any* permit %(if the%( *which allows the* applicant %(proposes%( to limit the use of public streets by pedestrians using the street%(s%( to move from location to location or %(if the applicant proposes%( to limit the use of *the* public parks when use of the park%(s%( by the general public shall not unreasonably disturb the activities of the %(planned%( festival. Nothing in this section shall be construed to prohibit the imposition of reasonable restrictions on the movement of the *general* public which are necessary for the carrying out of the festival; however, such restrictions shall not bar the admission *of any member* of the public on the grounds of race, *color,* religion, gender, *gender identity,* sexual orientation, age, *disability* or national or ethnic origin.

(b) Streets may be closed, portions of streets and parks may be gated, and an admission fee *may be* charged %(by the applicant%( in connection with an outdoor festival at the discretion of the %(c%(*C*hief of %(s%(*S*taff after consultation with the *Chief of P*%(p%(olice chief, *the* %(f%(*F*ire %(c%(*C*hief and *c*%(*C*%(ommissioners of %(p%(*P*ublic %(w%(*W*orks and *of* %(p%(*P*arks, %(r%(*R*ecreation and %(c%(*C*ultural affairs, *as may be appropriate,* %(having%( due regard *being given to* %(for%( the public safety and environmental effects of such closing, provided *that* all reasonable steps are taken to minimize the adverse effect such closings may have upon the public. In no event, however, shall Peachtree Street or Peachtree Road or any portion thereof which lies within the %(c%(*C*ity be closed by the %(c%(*C*hief of %(s%(*S*taff, *without the approval of Council by resolution* %(; authority for the closing of any portion of the Peachtree %(%(Corridor must be by resolution of the city council%(. *In the event that an event is gated, no person shall be barred from entering the gated area on the grounds of race, color, religion, gender, gender identity, sexual orientation, age, disability or national or ethnic origin.*

(c) For classification purposes, the %(c%(*C*hief of %(s%(*S*taff shall evaluate the application by the following criteria:

(1) The anticipated amount of extra personnel *hours* [extra personnel hours is italicized in the 2000 Festival Ordinance], *as defined in this article,* which shall be required to be furnished by the %(c%(*C*ity *in order* to accomplish the necessary %(public safety and%( %(sanitation %( *administrative, sanitary, and oversight* components of the festival. By agreement, as endorsed upo*n* the permit or in a separate contract, the applicant may furnish some of the personnel %(to%( required%(;%(, *in which event* %(and%( the anticipated *calculation* of *the extra* personnel *hours* [extra personnel hours is italicized in the 2000 Festival Ordinance] *may be* %(requirements for classification purposes shall be considered as %(reduce*d*%(s%( accordingly.

%((2) The type and amount of city services required other than extra personnel hours.%(

*(2)* %((3)%(The anticipated number of persons attending the event over the entire period of the festival. *In estimating this number, no regard shall be given to any estimate of the number of persons who may be anticipated to be in the vicinity of the festival as counter-demonstrators or to*

14

*show hostility to any message the festival may be perceived as having. Nor shall there be any consideration of the content of any speech or message which may be conveyed by such festival, nor by any considerations concerning the identity or associational relationships of the applicant, nor to any assumptions or predictions as to the amount of hostility which may be aroused in the public by the content of speech or message conveyed by the festival. Unless such estimate shall appear to have been made in palpable bad faith or otherwise grossly in error, the Chief of Staff shall be guided by the estimate provided by the applicant. If the Chief of Staff determines not to adopt the estimate given by the applicant, he shall state the reasons in writing on the permit.*

(d) The classes of outdoor festival permits and the evaluated factors %(of%( *for* each class shall be as follows:

(1) *Class A permit.* For a festival which will require between 100 and 300 extra personnel hours and for which the attendance is anticipated to be in excess of 50,000 persons over the entire period of the festival.

(2) *Class B permit.* For a festival which will require between 50 and 100 extra personnel hours and for which the attendance is anticipated to be between 20,000 and 50,000 persons over the entire period of the festival.

(3) *Class C permit.* For a festival which will require between 25 and 50 extra personnel hours and for which the attendance is anticipated to be between 10,000 and 20,000 persons over the entire period of the festival.

(4) *Class D permit.* For a festival which will require between %(three%( *3* and 25 extra personnel hours and for which %(the anticipated%( attendance is *anticipated to be* between 2,000 and 10,000 persons over the entire period of the festival.

(5) *Class E permit.* For a festival which will require *between* fewer than %(three%( *3* extra personnel hours and for which the attendance is anticipated to be %(between%( %(100 and%( *fewer than* 2,000 persons over the entire period of the festival.

*Section 138-205. Permit fees.*

[The 2000 Festivals Ordinance does not present the fee schedule in tabular form. Rather than reproducing the new format of the 2000 Festivals Ordinance fee schedule we have noted the changes in the tabular format utilized in the 1994 Festivals Ordinance.]

(a) *The application fee for each classification of permit shall be as follows: … (b)* %(If%( *After* the chief of staff approves the issuance of the permit%(, as provided in section 138-204,%( the applicant may obtain such permit by agreeing to accept the classification and conditions imposed %(by the chief of staff%( *in accordance with this article* and by paying the applicable permit fee and sanitation deposit fee%(.%(, %(Such%( *which* fees shall be determined according to the following schedule:

*Appli- Permit Sani- Class Atten- Extra*

| ...cation Fee | Fee | Sani-tation Deposit Fee | | Atten-dance | Per-sonnel Hours |
|---|---|---|---|---|---|
| $50.00 | $6,000.00 | $500.00 | A | 50,000+ | 100-300 |
| 50.00 | 2,000.00 | 300.00 | B | 20,000-50,000 | 50-100 |
| 50.00 | 1,000.00 | 150.00 | C | 10,000-20,000 | 25-50 |
| 50.00 | 500.00 | 75.00 | D | 2,000-10,000 | 3-25 |
| ~~20.00~~50.00 | 75.00 | 20.00 | E | 100-2,000 | 3 |

%((b)%( *(c) To the extent that a*%(A%(ny festival *may* require *%(ing in excess of the %(extra personnel hours [italicized in the 2000 Festival Ordinance] %(and city services%( *in excess of those* %(anticipated in the application and%( endorsed *up* on the permit, *the applicant* shall *be required to* reimburse %( the city for%( the cost of such *additional extra* %(excess%( personnel hours [excess personnel hours is italicized in the 2000 Festival Ordinance]%(and services in addition to the initial permit fee %(* to the extent that they exceed the sum of $500.00, and only to such extent, provided that the Chief of Staff, in order to impose such additional amount, must mail or deliver an invoice for such additional amount to the applicant no later than sixty (60) days after the last date of such festival*

%((c)%( *(d)* Upon satisfactory completion of the sanitation deposit agreement, *and provided*

in grammar or word choice, the 2000 Festival Ordinance differs from the 1994 Festival Ordinance in the following respects:  it (1) specifically excludes the hours of police officers from the definition of extra personnel hours, (2) adds to the definition of outdoor festival the explanation that such a festival "requires the erection of stages, barricades, utility poles, booths, tents, or other temporary structures, or the use of parked vehicles or of permanent structures," 2000 Festival Ordinance, § 138-187, (3) removes the exclusion of political demonstrations from the definition of an outdoor festival, (4) excludes from the definition of an outdoor festival any event with a scheduled duration of less than three hours, (5) requires that any time, place, manner restrictions imposed by the chief of staff for the issuance of a permit be based upon constitutional criteria, (6) adds additional bases—color, gender identity, and disability—upon which festival applicants are forbidden from discriminating, (7) specifically directs the applicant not to include counter-demonstrators in their estimate of the anticipated attendance, (8) directs the chief of staff to utilize the applicant's estimated attendance for classification of the festival unless the estimate was made in bad faith, and (9) establishes a deadline by which the City must bill the applicant for excess extra personnel hours expended on the festival. These changes do narrow the scope of events which will be governed by the 2000 Festival Ordinance; however, they do not substantially alter the appellants' argument that the ordinance is content-based because it discriminates against various messages based upon the size of crowd gathered and the manner in which the message is conveyed.  The appellants' argument that the narrow-tailoring requirement is not satisfied because the City does not have a legitimate interest in its stated purpose of assuring security and public safety and avoiding scheduling conflicts is not affected by the changes incorporated in the 2000 Festival Ordinance. Similarly, the appellants' argument that the 1994 Festival Ordinance does not leave open adequate alternative channels of communication is not impacted by the 2000 Festival Ordinance because it neither opens nor closes any additional channels of communication.  Finally, the appellants' arguments that the fee schedule in the 1994 Festival Ordinance is unconstitutional because the fees imposed are more than nominal and the

*that no further amount to due as set forth in subsection (c) above,* the sanitation deposit fee shall be refunded to the applicant.

fees are content-based are unaffected because the fees imposed remain almost completely identical and continue to be calculated based upon a sliding scale considering estimated attendance in the 2000 Festival Ordinance.[11]

Accordingly, we conclude that the issues presented on appeal have not been made moot by the repeal of the 1994 Festival Ordinance and simultaneous enactment of the 2000 Festival Ordinance. *See Crosby v. Hosp. Auth. of Valdosta and Lowndes County,* 93 F.3d 1515, 1534 (11th Cir.1996) (" 'Thus a superseding statute or regulation moots a case only to the extent that it removes challenged features of the prior law.' ") (quoting *Naturist Soc'y,* 958 F.2d at 1520).[12] It is reasonable to expect that the alleged constitutional violations resulting from the enforcement of the provisions of the 1994 Festival Ordinance validated by the district court will continue with the enforcement of the 2000 Festival Ordinance. Therefore, we must consider the merits of the appellants' arguments by reviewing the 2000 Festival Ordinance. *See Naturist Society,* 958 at 1519-20 (explaining that "[w]here a statute is amended after the entry of judgment in the trial court, but before the decision of the appellate court, the appellate court must 'review the judgment of the district court in light of [the] law as it now stands, not as it stood when the judgment below was entered.' ") (quoting *Diffenderfer v. Cent. Baptist Church of Miami, Fla., Inc.,* 404 U.S. 412, 414, 92 S.Ct. 574, 575, 30 L.Ed.2d 567 (1972) (alteration in original)).

---

[11]We note that the 2000 Festival Ordinance's specific directive for applicants not to consider potential counter-demonstrators when estimating attendance and the removal of the hours worked by police officers from the extra personnel hours component of the fee schedule make it more difficult for the City to manipulate the fees based on the content of a festival's message and eliminates a portion of the appellants' arguments regarding the constitutionality of the fees; however, they do not satisfy all the appellants' challenges against this portion of the ordinance. Therefore, we conclude that the gravamen of the appellants' complaint remains unaffected.

[12]Additionally, we note that a finding on our part that the provisions of the 1994 Festival Ordinance challenged on appeal are unconstitutional would provide the appellants relief from those alleged constitutional deprivations that they have suffered and presumably will continue to endure under the 2000 Festival Ordinance despite the district court's earlier finding that other portions of the 1994 Festival Ordinance were unconstitutional. The ability of this court to provide such relief further indicates that this appeal is not moot. *See City of Erie,* 120 S.Ct. at 1390 (concluding that "the availability of ... relief is sufficient to prevent the case from being moot").

18

*C.     Ripeness*

Like mootness, "[t]he ripeness doctrine 'prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.' " *Wilderness Soc'y v. Alcock,* 83 F.3d 386, 390 (11th Cir.1996) (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)) (second alteration in the original).  Nonetheless, our conclusion that the issues presented on appeal are not moot does not automatically suggest that the appeal is ripe for adjudication.  To determine whether a claim is ripe we must " 'evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' "  *Id.* Specifically we " must examine ' " 'whether there is sufficient injury to meet Article III's requirement of a case or controversy, and if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete to permit effective decision-making by the court.' " ' "  *Georgia Advocacy Office, Inc. v. Camp,* 172 F.3d 1294, 1298-99 (11th Cir.1999) (quoting *Socialist Workers Party,* 145 F.3d at 1244 (quoting *Digital Properties, Inc. v. City of Plantation,* 121 F.3d 586, 589 (11th Cir.1997) (quoting *Cheffer v. Reno,* 55 F.3d 1517, 1524 (11th Cir.1995)))).

We acknowledge that changes to the 1994 Festival Ordinance enacted by the City in the 2000 Festival Ordinance have not been reviewed by the district court.  We leave it for the appellants to challenge the constitutionality of those provisions which have been substantially altered by the 2000 Festival Ordinance in the district court.  The district court should review those provisions in the first instance and determine whether the City's changes to the ordinance comport with the requirements of the district court's order and whether those provisions, as amended, pass constitutional muster.  *However, the provisions of the 1994 Festival Ordinance challenged on appeal—those found by the district court to be constitutional—remain predominantly unchanged by the enactment of the 2000 Festival Ordinance.*  Therefore, we conclude that the alleged injury suffered by the appellants via the validated provisions satisfies Article III's requirement of a case or controversy, their claim is sufficiently mature, and the issues presented on appeal are sufficiently defined and concrete to permit effective decision-making by the court.  Accordingly, the issues presented by

19

the appellants are ripe for our review despite the fact that it remains the province of the district court to review the material changes enacted by the 2000 Festival Ordinance.

## II.   CONSTITUTIONALITY

Turning to the merits of the appeal, we review the district court's determination of the "constitutional facts" in a First Amendment case *de novo. Falanga v. State Bar of Ga.,* 150 F.3d 1333, 1335 (11th Cir.1998). Additionally, we consider the appellants' arguments that the 1994 Festival Ordinance is unconstitutional by analyzing the 2000 festival ordinance. *See Naturist Soc'y,* 958 at 1519-20 ("Where a statute is amended after the entry of judgment in the trial court, but before the decision of the appellate court, the appellate court must 'review the judgment of the district court in light of [the] law as it now stands, not as it stood when the judgment below was entered.' ") (quoting *Diffenderfer,* 404 U.S. at 414, 92 S.Ct. at 575 (alteration in original)); *see also Crosby,* 93 F.3d at 1533-34 (reviewing the "current statute as amended" to consider the issue presented on appeal); *Church of Scientology I,* 777 F.2d at 606 n. 22. (noting that "[t]here are numerous cases illustrating the principle that where a challenged ordinance is amended during litigation the appropriate course is to proceed to a consideration of the amended ordinance").

Like the 1994 Festival Ordinance, the 2000 Festival Ordinance imposes a prior restraint on conduct protected by the First Amendment.  Therefore, in order to be considered constitutional, the 2000 Festival Ordinance must meet the requirements for reasonable time, place and manner restrictions of protected speech in public fora.  As such, the 2000 Festival Ordinance must be "(1) ... content neutral, (2) ... narrowly tailored to serve a significant governmental interest, and (3) leave open ample alternative channels for communication of the information." *Int'l Caucus of Labor Comm. v. City of Montgomery,* 111 F.3d 1548, 1551 (11th Cir.1997).

*A.   Content-Neutrality*

20

We first consider the appellants' argument that the 2000 Festival Ordinance is content-based.[13] *See*

*Nationalist Movement v. City of Cumming, Forsyth County, Ga.,* 913 F.2d 885, 888 (11th Cir.) ("Our method

of determining the constitutionality of the ordinance depends initially on whether it regulates expressive

activity on the basis of content."), *vacated and reh'g granted by,* 921 F.2d 1125 (1990), *reinstated on reh'g,*

934 F.2d 1482 (1991), *aff'd on other grounds by,* 505 U.S. 123, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). The

appellants argued that the 1994 Festival Ordinance is content-based and point to the festival ordinance's

distinction between "political demonstrations" and "entertainment, dancing, music, dramatic productions, art

exhibitions, [and] parades" as support for their argument. R1-2-Ex. A, § 138-187. According to the

appellants, because dancing, music, dramatic productions, art exhibitions, and parades are all expressive

activities protected by the First Amendment just as is the expressive conduct associated with a political

demonstration, the 1994 Festival Ordinance's distinction between these forms of expressive conduct equates

to disparate treatment of protected conduct on the basis of its content.

This argument is not relevant to the 2000 Festival Ordinance because it does not make a distinction

between political demonstrations and other forms of expressive conduct. The 1994 Festival Ordinance

defined an outdoor festival in § 138-187 to exclude "events which are solely parades, footraces or political

demonstrations unless such parade, footrace or political demonstration is proposed as an integral part of a

larger festival." The 2000 Festival Ordinance, however, only excludes from the definition of an outdoor

festival those "events which are solely parades, unless such parade is proposed as an integral part of a broader

outdoor festival. Also excluded from the definition of 'outdoor festival' herein is any event with a scheduled

duration of three (3) hours or less." Ordinance No. 99-O-1040, § 138-187.[14]

---

[13]Although the appellants make all their arguments with regard to the 1994 Festival Ordinance, because we are required to review the 2000 Festival Ordinance when considering the issues presented on appeal and because they remain substantially unchanged, we will apply the appellants' arguments to the 2000 Festival Ordinance.

[14]We note that the "savings clause" added to the 2000 Festival Ordinance effectively excludes political demonstrations from the ambit of the ordinance in the same way that the exclusion of political demonstrations

21

Like the district court, we conclude that, upon examining the intent behind the 2000 Festival Ordinance, it is evident that the City adopted the ordinance in an effort to manage effectively and efficiently the use of the City's parks and other resources by the sponsors of large festivals, not because of a disagreement with the message conveyed by any particular festival. See *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989). The 2000 Festival Ordinance applies equally to all festivals of any kind without regard to the content of any message the festival sponsor might convey. The 2000 Festival Ordinance only distinguishes between various festivals or similar gatherings on the basis of physical attributes, not content. The 2000 Festival Ordinance defines an Outdoor Festival as an event including various forms of expressive conduct "and which requires the erection of stages, barricades, utility poles, booths, tents, or other temporary structures, or the use of parked vehicles or of permanent structures." Ordinance No. 99-O-1940, § 138-187. These criteria attempt to identify those outdoor events which will require additional municipal services. It does not attempt to create distinctions based upon the content of the speech and the 2000 Festival Ordinance specifically forbids the Chief of Staff from basing the decision to grant a festival permit on the content of speech or message conveyed by the festival. *See* Ordinance No. 99-O-1940, § 138-203. By distinguishing events which require additional city resources based upon their physical attributes, the City can schedule and coordinate the municipal services required to ensure public safety and otherwise accommodate these large public gatherings. Therefore, because the 2000 Festival Ordinance "serves purposes unrelated to the content of expression" and is " '*justified* without reference to the content of the regulated speech,' " we, like the district court, conclude that it is content-neutral. *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989) (citations omitted).

from the definition of an Outdoor Festival did in the 1994 Festival Ordinance. *Compare* 1994 Festival Ordinance § 138-187 (excluding political demonstrations from the definition of an Outdoor Festival and defining a political demonstration as "a public gathering, procession or parade, the primary purpose of which is the exercise of the rights of assembly and free speech as guaranteed by the first amendment to the Constitution of the United States") *with* 2000 Festival Ordinance § 138-209 (stating that "[n]othing in this article shall be construed to prevent members of the public from assembling in the parks or streets for the purpose of making any speech or conveying any message to the public or government without holding an outdoor festival permit pursuant to this article").

*B.      Narrowly Tailored*

The appellants also argue that the 2000 Festival Ordinance is not narrowly tailored to serve a significant governmental interest. The appellants question the legitimacy of the city's stated purposes of assuring security and public safety, as well as avoiding scheduling conflicts. "To demonstrate the significance of its interest, the City is not required to present detailed evidence ...,[but] is 'entitled to advance its interests by arguments based on appeals to common sense and logic.' " *International Caucus of Labor Comm.,* 111 F.3d at 1551 (quoting *Multimedia Publishing Co. of S. Carolina, Inc. v. Greenville-Spartanburg Airport,* 991 F.2d 154, 160 (4th Cir.1993)). Taking a common sensical approach, we find it obvious that the City has a significant interest in regulating the use of its parks and streets by large groups. Certainly, the City needs advance notice and the cooperation of organizers to plan the services, such as security, sanitation, and traffic control, that are required for an event which, like the Pot Festival, attracts approximately 30,000 participants. It is only logical that a framework is needed for the City to work with the organizers of a large, multi-faceted event in order to coordinate the City's resources to successfully accommodate the event. The 2000 Festival Ordinance provides such a framework.

Since we conclude that the City's stated purposes for the 2000 Festival Ordinance are legitimate and significant interests of the City, we must determine whether there is a "reasonable fit" between those interests and the 2000 Festival Ordinance, as the City's chosen means for serving them. *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 416, 113 S.Ct. 1505, 1510, 123 L.Ed.2d 99 (1993). In this analysis, the City bears the burden of demonstrating a "logical and practical relationship between the restriction and [its] interests, so that [we] may determine whether the restriction is substantially broader than is necessary to achieve those ends." *Nationalist Movement,* 913 F.2d at 890. However, the City need not prove that the 2000 Festival Ordinance is the least restrictive means of serving them, *see Jim Gall Auctioneers, Inc. v. City of Coral Gables,* 210 F.3d 1331, 1333 (11th Cir.2000) (quoting *Smith v. City of Fort Lauderdale, Fla.,* 177 F.3d 954, 957 (11th Cir.1999)); "[t]he requirement of narrow tailoring is satisfied 'so long as the ... regulation

23

promotes a substantial government interest that would be achieved less effectively absent the regulation.' " *Rock Against Racism,* 491 U.S. at 799, 109 S.Ct. at 2758 (alteration in original) (citation omitted). The district court determined that portions of the 1994 Festival Ordinance were not narrowly tailored to meet the City's interests because they granted the chief of staff unfettered discretion. The appellants challenge the conclusion that other portions of the 2000 Festival Ordinance satisfy the narrow tailoring requirement.

1.      Section 138-187

After reviewing the 2000 Festival Ordinance, we conclude that the district court properly determined that § 138-187 is narrowly tailored to exclude those events which do not require additional governmental services and therefore do not logically fit within the scope of the City's interests. We note that the addition of the description of events "requir[ing] the erection of stages, barricades, utility poles, booths, tents, or other temporary structures, or the use of parked vehicles or of permanent structures," Ordinance No. 99-O-1940, § 138-187, in the 2000 Festival Ordinance further limits the universe of events that will fall within the parameters of the 2000 Festival Ordinance regulations and, thus, does not burden " 'substantially more speech than is necessary to further the government's legitimate interest.' " *Smith,* 177 F.3d at 956 (quoting *One World One Family Now v. City of Miami Beach,* 175 F.3d 1282, 1287 (11th Cir.1999)) (second citation omitted).

2.      Section 138-204

The district court also determined that § 138-204(a) and (b) was not unconstitutional because it primarily granted the Chief of Staff the authority to impose restrictions on the applicants after their festival permit had been approved. The district court did note that § 138-204 required the chief of staff to deny any application where the applicant "proposes to limit the use of public streets by pedestrians using the streets to move from location to location or if the applicant proposes to limit the use of public parks when use of the parks by the general public shall not unreasonably disturb the activities of the planned festival," but concluded that this restriction was "narrowly tailored to meet its justification." R2-37 at 34-35. This restriction remains

24

in force in the 2000 Festival Ordinance.  We, likewise, conclude that this restriction does not overburden festival permit applicants because, as the Supreme Court has noted "[m]unicipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for the movement of people and property, the primary purpose to which the streets are dedicated." *Schneider. v. State of New Jersey, Town of Irvington,* 308 U.S. 147, 160, 60 S.Ct. 146, 150, 84 L.Ed. 155 (1939).  *See also Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 296, 104 S.Ct. 3065, 3070, 82 L.Ed.2d 221 (1984) (recognizing the government's "substantial interest in maintaining the parks ... in an attractive and intact condition, readily available to the millions of people who wish to see and enjoy them)."  Therefore, we conclude that the district court properly determined that the above provisions satisfied the requirement of being narrowly tailored to serve the City's significant interests.

C.      *Alternative Channels of Communication*

The appellants also contend that the 2000 Festival Ordinance does not provide effective access to alternative avenues for communication of their message.  The appellants assert that use of the city park for the Pot Festival is "absolutely essential" for them to convey their message to the intended audience.  Appellants' Brief at 19.  Additionally, the appellants argue that they absolutely require lighting, electricity, barricades, and stage covers to effectively convey their message.

The City can satisfy the requirement that alternative channels of communication remain open to CAMP even if those channels "may be less effective than [CAMP] would prefer." *ISKCON Miami, Inc. v. Metropolitan Dade County,* 147 F.3d 1282, 1290 (11th Cir.1998).  As the district court found when it denied CAMP's request for a preliminary injunction, CAMP may hold a political demonstration and concert in a city park without a festival permit.  *See* R2-37 at 6. Therefore, CAMP still has the opportunity to communicate its message advocating changes in the marijuana laws without a festival permit.  Section 138-209 of the 2000 Festival Ordinance specifically limits the application of the 2000 Festival Ordinance and provides that "[n]othing in this article shall be construed to prevent members of the public from assembling in the parks

25

or streets for the purpose of making any speech or conveying any message to the public or to the government without holding an outdoor festival permit." Ordinance No. 99-O-1940, § 138-209. Those individuals who organize an assembly without an outdoor festival permit are only limited in the sense that they are not "entitled to the benefits of [the new festival ordinance], including but not limited to, the right to erect stages, barricades, utility poles, booths, tents, or other temporary structures, or the use of parked vehicles or of permanent structures, or to the assistance of city personnel in carrying out their event." *Id.* Lighting, stage covers, electricity, barricades, or any of the other benefits conferred by an outdoor festival permit are not essential to CAMP's message, rather they are convenient mechanisms for increasing the efficiency with which CAMP might choose to communicate its message. Accordingly, we conclude that ample alternatives remain available to CAMP for communicating its message despite the restrictions created by the 2000 Festival Ordinance.

D.      *Section 138-205:  Festival Permit Fees*

The appellants argue that the fees required for the grant of a festival permit are unconstitutional because the required fees are manipulated according to the content of the speech and they are more than nominal. The Supreme Court has authorized a municipality to charge "fees for the use of the public streets only when such fees are both nominal and related to the expenses incidental to the policing of the event" *Cent. Fla. Nuclear Freeze Campaign v. Walsh,* 774 F.2d 1515, 1522 (11th Cir.1985) (interpreting *Murdock v. Com. of Pennsylvania,* 319 U.S. 105, 63 S.Ct. 870, 87 L.Ed. 1292 (1943)). In § 138-205, the 2000 Festival Ordinance requires the each applicant for a festival permit to pay a $50 application fee. Upon approval, each applicant is required to pay a permit fee and sanitation deposit fee. The total amount of these fees ranges from $6,500 to $95, based upon a sliding scale which considers the number of persons expected to attend the event and the number of extra personnel hours which the City will expend on the festival, excluding the hours spent on the festival by the City's Special Events Coordinator, police officers, and any person with a ranking of bureau director or higher. Applicants have the opportunity to reduce the fee by supplying some of the

26

personnel required when calculating the extra personnel hours for which the City anticipates paying. Additionally, the sanitation deposit fee will be returned to the applicant after they have completed the sanitation deposit agreement by cleaning the festival area of litter and debris and restoring parks and streets damaged in connection with the festival. The applicant is also required to reimburse the City for the cost of any extra personnel hours which exceed those provided for in the festival permit fee.

The district court, reviewing the markedly similar fee provisions of the 1994 Festival Ordinance, found that the initial fee schedule was "both reasonable and content neutral." R2-37 at 38. Additionally, the district court concluded that the fees satisfied the requirement of being nominal because they "actually reflect[ ] administrative costs." *Id.* at 41 n. 20. Therefore, the district court concluded that the imposition of fees as provided in § 138-205 "does not unconstitutionally burden the free exercise of speech ... [because a] municipality can impose a reasonable fee on certain kinds of expressive activities to recover its costs, so long as the charge imposed does not exceed the administrative costs of regulating the protected activity." *Id.* at 36.

We agree with the district court that the fees assessed under § 138-205 are content neutral. CAMP argues that the fees are content-based because (1) they are based on anticipated attendance at the festival and, thus, discriminate against festivals which attract larger crowds and (2) the number of extra personnel hours charged to the festival can be manipulated so as to accomplish content-based discrimination.[15] The fees are calculated based upon a sliding scale where the variables only include the extra personnel hours the City will expend and the anticipated number of individuals who will attend the festival.

---

[15]CAMP specifically argued that the police could clearly manipulate their estimate of the number of police officers required for the festival. This specific argument is no longer relevant in the context of the 2000 Festival Ordinance because the 2000 Festival Ordinance excludes the hours worked by police officers from the total number of extra personnel hours expended by the City on a particular festival. Therefore, we consider their argument in the context of the larger question of whether the extra personnel hours charged to a festival by the City is manipulable according to the message a festival might seek to convey.

27

When determining the anticipated attendance for the festival, "the Chief of Staff shall be guided by the estimate provided by the applicant, ... [u]nless such estimate shall appear to have been made in palpable bad faith or otherwise grossly in error." Ordinance No. 99-O-1940, § 138-204(c)(2). "If the Chief of Staff determines not to adopt the estimate given by the applicant, he shall state the reasons in writing on the permit." *Id.* Further, the 2000 Festival Ordinance makes clear that "no regard shall be given to any estimate of the number of persons who may be anticipated to be in the vicinity of the festival as counter-demonstrators or to show hostility to any message the festival may be perceived as having." *Id.* These provisions assure that the estimate of anticipated attendance is not manipulated in order to burden unconstitutionally speech based upon its content.

Moreover, CAMP's argument that the fee schedule is content-based because higher fees are charged for those festivals where the anticipated attendance is larger contradicts the reasoning of the Supreme Court in *Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941). There, the Court, considering a parade licensing fee which was adjusted to consider the comparatively greater expense of "policing" an expansive event, rejected the notion that a municipality should charge a flat fee for all parades and explained that the court "perceived no constitutional ground for denying to local governments that flexibility of adjustment of fees which in the light of varying conditions would tend to conserve rather than impair the liberty sought." *Id.* at 577, 61 S.Ct. at 766. Similarly, in *Murdock v. Pennsylvania,* 319 U.S. 105, 113-14, 63 S.Ct. 870, 875, 87 L.Ed. 1292 (1943), the Supreme Court found a local ordinance charging a flat fee per day for a license to canvass or solicit within the locality to be unconstitutional because "the license tax [wa]s fixed in amount and unrelated to the scope of the activities of petitioners or their realized revenues." It is only logical that the City's costs for supporting a festival will be increased in some proportion to the number of individuals attending the festival. Therefore, we conclude that fees based upon a sliding scale considering the anticipated attendance of the festival are not content-based but, instead, are reasonably related to "the expenses of policing the activities in question." *Murdock,* 319 U.S. at 113-14, 63 S.Ct. at 875.

28

Under the 2000 Festival Ordinance, the number of extra personnel hours required for a festival is determined by the Chief of Staff. After a completed application has been submitted to the City's Special Events Coordinator, copies of the application are forwarded to the Departments of Police, Fire, Public Works, Parks, Recreation and Cultural Affairs, the Bureau of Buildings, and the affected Neighborhood Planning Unit. These departments each estimate the number of extra personnel hours that will be required by their department for the festival in question. The definition of extra personnel hours excludes the personnel hours worked by the City's Special Events Coordinator, any City employee at the level of bureau director or higher, and all police officers. The applicant may enter a separate contract with the City whereby the applicant furnishes some of the personnel required and, therefore, reduces the calculation of extra personnel hours and the associated fee.

While the 2000 Festival Ordinance does not provide the various department heads specific criteria for determining the number of extra personnel hours that will be required by their department to support a particular festival, section 138-203(b)(3) provides the admonition that "no consideration may be given to the message of the festival, nor to the content of speech, nor the identity or associational relationships of the applicant, nor to any assumptions or predictions as to the amount of hostility which may be aroused in the public by the content of speech or message conveyed by the festival." Ordinance No. 99-O-1940, § 138-203(b)(3). Further, § 138-203(b)(5) provides that "[n]o applicant for, or recipient of, an outdoor festival permit shall be required to provide for, or pay for the cost of, public safety personnel necessary to provide for the protection of a festival and its attendees from hostile members of the public or counter-demonstrators, or for traffic control, or for general law enforcement in the vicinity of the festival." Ordinance No. 99-O-1940, § 138-203(b)(5).

These provisions avoid the problem created by the ordinance which the Supreme Court found to be facially unconstitutional in *Forsyth County, Ga.,* 505 U.S. 123, 112 S.Ct. 2395, 120 L.Ed.2d 101. That ordinance authorized the county administrator to assess a fee covering " ' "the expense incident to the

29

administration of the Ordinance and to the maintenance of public order in [the parade, procession, of open air public meeting] licensed." ' " *Id.* at 126-127, 112 S.Ct. at 2399 (citations omitted). The county's intent was for the fee to also cover " 'the cost of necessary and reasonable protection of persons participating in or observing said ... activit[y].' " *Id.* at 134, 112 S.Ct. at 2403 (quoting App. to Pet. for Cert. 100) (alteration in original). The Supreme Court found that this fee scheme was an impermissible content-based restriction on speech because "[t]he fee assessed will depend on the administrator's measure of the amount of hostility likely to be created by the speech based on its content." *Id.* The Supreme Court noted that "[s]peech cannot be financially burdened, any more than it can be punished or banned, simply because it might offend a hostile mob." *Id.* at 134-135, 112 S.Ct. at 2404. *See also Cent. Fla. Nuclear Freeze Campaign,* 774 F.2d at 1525 (concluding that the presence of out-of-town demonstrators and the potential for hostile counter activity are factors that "cannot be considered in fixing the costs of protection to those asking to exercise their First Amendment rights" ). Additionally, the festival applicant's ability to negotiate the number of extra personnel hours assessed to the festival and enter a separate contract with the City whereby they agree to supply some of the personnel required in the City's calculation of the extra personnel hours it will expend supporting the festival strongly mitigates against the danger of any content-based discrimination creeping into the City's analysis of the number of extra personnel hours required for a festival.

The 2000 Festival Ordinance is not a content-based prior restriction on speech. Not only does the new festival ordinance specifically direct the chief of staff not to consider "the amount of hostility which may be aroused in the public by the content of speech or message conveyed by the festival" when determining where the festival should be classified on the fee scale and what the amount of the resulting permit fee should be, but it also excludes from the calculation of the permit fee those extra personnel hours expended by the city for police or other "public safety personnel necessary to provide for the protection of a festival and its attendees from hostile members of the public or counter-demonstrators, or for traffic control, or for general law enforcement in the vicinity of the festival." Ordinance No. 99-O-1940, §§ 138-204(a) and 138-203(b)(5).

30

Further, the 2000 Festival Ordinance provides that "no regard shall be given to any estimate of the number of persons who may be anticipated to be in the vicinity of the festival as counter-demonstrators or to show hostility to any message the festival may be perceived as having" when estimating the number of individuals expected to attend the festival and directs the Chief of Staff to use the applicants' estimate of attendance unless it "appear[s] to have been made in palpable bad faith or otherwise grossly in error." *Id.* at § 138-204(c)(2). Therefore, we conclude that the permit fees that festival organizers are required to pay by the 2000 Festival Ordinance are not content-based, nor are subject to manipulation predicated on the content of a festival's perceived message. *Cf. Stonewall Union v. City of Columbus,* 931 F.2d 1130, 1135 (6th Cir.1991) (finding that when an "ordinance contains objective standards related to traffic control and not related to speculation about the potential for disturbances based on the parade's content, ... [then] the scheme for assessing the costs of traffic control is not unconstitutional").

The appellants also argue that the fees imposed by the 2000 Festival Ordinance are more than nominal. In *Nationalist Movement,* 934 F.2d at 1483, this court, sitting *en banc,* reinstated the panel decision which refused to "stake out the outer limits of a 'nominal' charge," but held that a provision requiring "a permit fee of up to $1,000 for each day that a parade or rally takes place exceeds the constitutional requirement that such a charge be at most nominal." *Nationalist Movement,* 913 F.2d at 891. On appeal, the Supreme Court agreed that the fee provision of the ordinance in question was unconstitutional because it was a content-based, prior restraint on speech protected by the First Amendment, not because the $1,000 fee imposed was more than nominal. *See Forsyth County, Ga.,* 505 U.S. at 136, 112 S.Ct. at 2405. The Court noted that "[a] tax based on the content of speech does not become more constitutional because it is a small tax." *Id.* The Supreme Court also discussed our interpretation of *Murdock* as requiring that permit fees imposed on protected speech be "nominal" and commented that the Supreme Court's language in *Murdock* "does not mean that an invalid fee can be saved if it is nominal, or that only nominal charges are constitutionally permissible." *Id.* at 137, 112 S.Ct. at 2405. The Chief Justice, in a dissent joined by Justices

White, Scalia, and Thomas, more explicitly explained that "[t]he use of the word 'nominal' in *Murdock* was ... a mistaken characterization of the fee statute in *Cox* ... [and] that the Constitution does not limit a parade license fee to a nominal amount." *Id.* at 139-140, 112 S.Ct. at 2406 (Rehnquist, C.J. dissenting) (arguing that, because the lower court had not based its decision upon the analysis adopted by the majority, the court should remand so that the lower courts could first consider the issues presented).

We need not consider the impact of the Supreme Court's discussion of nominal fees in *Forsyth County, Ga.* on our precedent requiring that the fees imposed on constitutionally-protected speech be nominal because we hold that the fees imposed by the 2000 Festival Ordinance are nominal.[16] The nominality of the fees imposed by the 2000 Festival Ordinance must be considered in the context of the size of the festival to which they apply. *See* Ordinance No. 99-01940 §§ 138-204(d) and 138-205(b) (imposing fees of $95 for a festival where fewer than 2,000 persons are expected to attend and which requires fewer than 3 extra personnel hours, $575 where expected attendance is between 2,000 and 10,000 people and the extra personnel hours required are between 3 and 25, $1,150 when estimated attendance is between 10,000 and 20,000 and

---

[16]While we do not specifically address the impact of the Supreme Court's holding in *Forsyth County, Ga.* to our precedent, we note that the majority of our sister circuits have interpreted *Forsyth County, Ga.* as making it constitutionally permissible for an ordinance regulating constitutionally protected activity to impose a permit fee which is more than nominal so long as the permit fee is reasonably related to "the expense incident to the administration of the act and to the maintenance of public order in the matter licensed." *Cox v. State of New Hampshire,* 312 U.S. 569, 577, 61 S.Ct. 762, 766, 85 L.Ed. 1049 (1941). *See American Target Advertising, Inc. v. Giani,* 199 F.3d 1241, 1249 (10th Cir.2000) (upholding an act imposing a registration fee on constitutionally protected activity that "does no more than defray reasonable administration costs"); *Northeast Ohio Coalition for the Homeless v. City of Cleveland,* 105 F.3d 1107, 1110 (6th Cir.1997) (holding that "a more than nominal permit fee is constitutionally permissible so long as the fee is 'reasonably related to the expenses incident to the administration of the ordinance and to the maintenance of public safety and order' "); *MacDonald v. Chicago Park Dist.,* 132 F.3d 355, 362-63 (7th Cir.1997) (finding it unlikely that a plaintiff could show that the fee provision of a ordinance was facially unconstitutional when the fees were set according to a content-neutral schedule); *Nat'l Awareness Found. v. Abrams,* 50 F.3d 1159, 1165 (2nd Cir.1995) (holding that "fees that serve not as revenue taxes, but rather as means to meet the expenses incident to the administration of a regulation and to the maintenance of public order in the matter regulated are constitutionally permissible"); *Center for Auto Safety, Inc. v. Athey,* 37 F.3d 139, (4th Cir.1994) (upholding a statute imposing fees on protected speech because the fees were narrowly tailored to further a legitimate government purpose and the revenues raised by the fees do not exceed the costs of administering the Statute).

25 to 50 extra personnel hours are required, $2,300 when estimated attendance is between 20,000 and 50,000 people and the extra personnel hours required is between 50 and 100, and $6,500 when more than 50,000 attendees are expected and between 100 and 300 extra personnel hours are required). We conclude that the fees of imposed by the 2000 Festival Ordinance are nominal when balanced against the size of the festival to which they are applied. The fees are imposed based upon a sliding scale considering the relevant factors which impact the City's expense in supporting the event. The fees recoup the City's expenses in administering the 2000 Festival Ordinance and supporting the outdoor festival in question. The parties do not contend that the fees exceed those expenses or serve as a form of revenue tax. Additionally, applicants for an outdoor festival permit have the opportunity to reduce the permit fees by entering a separate agreement with the City whereby the applicant supplies some of the personnel which the City would ordinarily utilize to support the festival. Similarly, the sanitation portion of the permit fees is returned to the applicant if it cleans up the public spaces utilized for the festival. Therefore, we conclude that the fee schedule established by the 2000 Festival Ordinance is narrowly tailored to serve the City's legitimate interest in covering the cost of supporting the outdoor festival and, therefore, is constitutionally permissible. *See Murdock,* 319 U.S. at 113-14, 63 S.Ct. at 875 (striking down a fee that was not "imposed as a regulatory measure to defray the expenses of policing the activities in question").

III.    SUPPLEMENTARY JURISDICTION

The appellants argue that the district court erred by not exercising supplementary jurisdiction and discussing their state law claim that the 1994 Festival Ordinance violated the Georgia Constitution. A court's exercise of supplemental jurisdiction is statutorily controlled by 28 U.S.C. § 1367.[17] As we have previously

---

[17]The relevant portions of § 1367 provide the following:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental

33

held "whenever a federal court has supplemental jurisdiction under section 1367(a), that jurisdiction should be exercised unless section 1367(b) or (c) applies." *Palmer v. Hosp. Auth. of Randolph County,* 22 F.3d 1559, 1569 (11th Cir.1994) (remanding for the district court to consider, in the first instance, whether it had to discretion under 18 U.S.C. § 1367(c) not to exercise supplemental jurisdiction over state law claims).

The appellants' state law claims satisfy the "same case and controversy" requirement of section 1367(a);  therefore, the district court had the power to consider the appellants' claim that the 1994 Festival Ordinance violated the Georgia Constitution.  However, after stating that the 1994 Festival Ordinance violated Article 1, Section 1, Paragraph 9 of the Georgia Constitution, *see* R1-1-3, and listing this alleged violation as one of the legal issues to be tried in the Joint Preliminary Statement and Scheduling Order, *see* R1-7-1, the appellants abandoned this argument.  The appellants did not present this argument in their motion for partial summary judgment, nor did they cite any authority for this argument in their Brief in Support of Motion for Partial Summary Judgement or their Response to Defendants' Motion For Summary Judgement.

---

jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367

34

*See* R1-18 at 2 and 4-17; R1-22. After the district court denied both the appellants' and the City's motion for summary judgment, the appellants did not raise their argument that the 1994 Festival Ordinance violated the Georgia Constitution in any documents submitted to the district court nor did they urge the issue upon the district court during the two-day bench trial which it conducted. During his opening statement, counsel for the appellants made the following statement regarding the scope of their case:

> I DON'T WANT TO REPEAT WHAT I'VE SAID IN MY MOTION FOR SUMMARY JUDGMENT OR WHAT I HAVE SAID IN THE BRIEF THAT I FILED LAST WEEK. JUST SIMPLY WE WANT TO MAKE THREE POINTS.
>
> ONE IS WE THINK THAT THE ORDINANCE ON ITS FACE IS UNCONSTITUTIONAL BECAUSE OF THE IMMENSE DISCRETION THAT IT GIVES.
>
> SECOND OF ALL, WE THINK THAT THE THINGS THAT WERE ASKED FOR ORIGINALLY AND ARE ASKED FOR IN OUR COMPLAINT IN TERMS OF STAGE AND LIGHTING AND ELECTRICITY AND BARRICADES AND SO ON IS IMPORTANT SOLELY BECAUSE IT PROVIDES EFFECTIVE ACCESS. AND AS I POINTED OUT IN MY BRIEF, WE ARE ENTITLED TO EFFECTIVE ACCESS EVEN IF WE ARE NOT ENTITLED TO THE MOST EFFECTIVE ACCESS.
>
> AND FINALLY I WANT TO POINT OUT THAT WHEN YOU HEAR, AS YOU HAVE HEARD BEFORE, THE COMMENTS OF THE POLICE THAT YOU SIMPLY CANNOT BAR AN EVENT BECAUSE OF PAST UNLAWFUL ACTIVITY EVEN, I MIGHT ADD, IF MY CLIENT WERE THE ONE WHO HAD ADVOCATED THE PAST UNLAWFUL ACTIVITY, AND THERE IS NO EVIDENCE OF THAT.

R3 at 4-5. The appellants did not discuss their assertion that the 1994 Festival Ordinance violated the Georgia Constitution during the two-day trial before the district court and never cited any authority in support of the argument prior to this appeal. The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned. *Fehlhaber v. Fehlhaber,* 681 F.2d 1015, 1030 (5th Cir.1982) (citing *U.S. v. Indiana Bonding & Surety Co.,* 625 F.2d 26, 29 (5th Cir.1980) (finding that "[e]ven though [an] issue was listed as one of the defendant's contentions in the pretrial order, and was thus presumably triable, [the defendant's] failure to present evidence in support of the defense before the district court precludes our review of it [on appeal]")). *Cf. McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir.1999) (noting that a claim may be considered abandoned when the allegation is

35

included in the plaintiff's complaint, but he fails to present any argument concerning this claim to the district court); *Lyes v. City of Riviera Beach, Fla.,* 126 F.3d 1380, 1388 (11th Cir.1997) (noting that " 'the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned' ") (citation omitted), *reh'g granted and vacated by,* 136 F.3d 1295 (1998), *reinstated by,* 166 F.3d 1332, 1336 (11th Cir.1999) (*en banc* ); *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir.1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment").

We conclude that, because the appellants effectively abandoned in the district court their argument that the 1994 Festival Ordinance violated the Georgia Constitution, there was no reason for the district court to consider whether to exercise its discretion not to exercise supplemental jurisdiction under section 1367(b) or (c). Accordingly, the district court did not err by failing to exercise supplementary jurisdiction and discussing the appellants' claim that the 1994 Festival Ordinance violated the Georgia Constitution. Similarly, because the issue was not appropriately raised in the district court, we will not consider the appellants' arguments that the 2000 Festival Ordinance violates the Georgia Constitution. *See Narey v. Dean,* 32 F.3d 1521, 1526-27 (11th Cir.1994) (discussing the general rule that appellate courts do not consider issues or arguments not raised in the district court and the five exceptions to that rule).

## CONCLUSION

Reviewing the 2000 Festival Ordinance promulgated by the Atlanta City Counsel in response to the district court's finding that portions of the 1994 Festival Ordinance were unconstitutional, we conclude that those portions of the 2000 Festival Ordinance validated by the district court satisfy the requirements of a constitutional time, place, manner restriction on constitutionally protected speech. The 2000 Festival Ordinance is content-neutral, narrowly tailored to serve a significant government interest, and leaves open ample alternative channels of communication. We also conclude that the appellants abandoned in the district court their argument that the 1994 Festival Ordinance violated the Georgia Constitution. Therefore, the

36

district court acted properly in not exercising supplementary jurisdiction over this claim and we do not consider it on appeal.  Accordingly, we AFFIRM the holding of the district court.

COX, Circuit Judge, concurring in part and dissenting in part:

I join the part of the court's opinion that concludes that CAMP abandoned in the district court its claims that the 1994 Festival Ordinance violated the Georgia Constitution.  But because it appears to me that the City of Atlanta's repeal of the 1994 Festival Ordinance and adoption of the 2000 Festival Ordinance moots the claims that the 1994 Festival Ordinance violates the Federal Constitution, I respectfully dissent.

As the majority observes, "a superseding statute or regulation moots a case only to the extent that it removes challenged features of the prior law.  To the extent that those features remain in place, and changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case is not moot."  *Naturist Soc'y, Inc. v. Fillyaw,* 958 F.2d 1515, 1520 (11th Cir.1992).  But "[w]here a law is amended so as to remove its challenged features, the claim for injunctive relief becomes moot as to those features."  *Id.* My comparison of the 1994 and 2000 ordinances and analysis of the parties' arguments leads me to conclude that the superseding ordinance has materially altered the City's approach to issuing festival permits, removing the challenged features of the prior ordinance and mooting CAMP's claims for injunctive relief.

First, CAMP's facial attack on the 1994 Festival Ordinance as content-based appears to be moot.  CAMP argued that § 138-187 of the 1994 Festival Ordinance was impermissibly content-based because it distinguished between "political demonstrations" and "entertainment, dancing, music, dramatic productions, art exhibitions, [and] parades."  As the majority notes, § 138-187 of the 2000 Festival Ordinance (unlike that section in the 1994 Festival Ordinance) does not distinguish between political demonstrations and other expressive conduct.[1]  Furthermore, the 2000 Festival Ordinance explicitly forbids the City's Chief of Staff

---

[1] As noted by the majority, § 138-209 of the 2000 Festival Ordinance effectively excludes purely political speech from coverage.  CAMP has not argued, however, that § 138-209 of the 2000 Festival Ordinance is impermissibly content-based, and this section provides a different mechanism for excluding purely political

from basing a permitting decision on the content of the speech or the message to be conveyed by the festival. *See* Ord. No. 99-O-1940, § 138-204. Accordingly, the 2000 Festival Ordinance removed CAMP's content-based challenge insofar as CAMP argued that the 1994 Festival Ordinance distinguished between political demonstrations and other expressive conduct.

Also moot is CAMP's argument that the 1994 Festival Ordinance's fees were unconstitutional because they were manipulable according to the content of the speech.[2] CAMP argued that the City could manipulate both the estimated attendance and the number of police officers required at a festival based on the content of the message to be delivered. The 2000 Festival Ordinance removes these challenged attributes in four ways: (1) the Chief of Staff is directed to be guided by the applicant's estimated attendance for classification of the festival, unless the estimate was "made in palpable bad faith or otherwise grossly in error," and the Chief of Staff must provide written reasons for declining to adopt the applicant's estimate; (2) the Chief of Staff is directed not to consider counter-demonstrators in his evaluation of anticipated attendance; (3) the Chief of Staff is directed not to consider the content of any speech or message to be conveyed by a festival permit applicant;[3] and (4) the personnel hours worked by police officers are excluded from the definition of "extra personnel hours" to be billed to those who receive festival permits.[4] In the absence of these challenged features, CAMP's claim that the fee provisions are unconstitutional appears to be moot.

Finally, CAMP claimed that the 1994 Festival Ordinance's permitting requirements for "outdoor festivals" were not narrowly tailored to serve a significant governmental interest and leave open ample

---

speech.

[2]CAMP also argued that under the 1994 Festival Ordinance the permit fees were unconstitutional because they were "not nominal," since they included the costs of additional police protection. CAMP's "not nominal" challenge to the fees is intertwined with its content-based challenge. Therefore, I conclude that all of CAMP's fee challenges are moot.

[3]Ord. No. 99-O-1940, § 138-204(c)(2).

[4]*See* Ord. No. 99-O-1940, § 138-187.

alternative channels of communication. The 2000 Festival Ordinance is more narrowly tailored and provides additional alternative channels of communication; therefore, the original controversy between the parties is no longer before us. The 2000 Festival Ordinance narrows the definition of "outdoor festival" in two ways. First, an "outdoor festival" includes events that require "the erection of stages, barricades, utility poles, booths, tents, or other temporary structures, or the use of parked vehicles or of permanent structures," in addition to meeting the 1994 Festival Ordinance's definition. Ord. No. 99-O-1940 § 138-187. Second, any event with a scheduled duration of three hours or less does not fall within the new "outdoor festival" definition.[5] *See id.* This second narrowing of the "outdoor festival" definition also permits additional alternative means of communication. The 2000 Festival Ordinance also requires any time, place, and manner restrictions imposed by the City's Chief of Staff to be based on constitutional criteria. *See* Ord. No. 99-O-1940 § 138-204(a). The ordinance has been "sufficiently altered so as to present a substantially different controversy from the one the district court originally decided." *Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla.,* 508 U.S. 656, 671, 113 S.Ct. 2297, 2306, 124 L.Ed.2d 586 (1993) (O'Connor, J., dissenting). I would therefore conclude that this claim is moot as well.

There must, of course, be a "present, live controversy in order to avoid advisory opinions on abstract propositions of law." *Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater,* 777 F.2d 598, 604 (11th Cir.1985) (internal citation omitted). Because the 2000 Festival Ordinance removed the challenged features of the 1994 Festival Ordinance, the original controversy has been rendered a mere abstraction. *See Naturist Soc'y,* 958 F.2d at 1520. Accordingly, I would dismiss as moot CAMP's appeal challenging the district court's conclusion that certain aspects of the 1994 Festival Ordinance are constitutional.

---

[5]Although the majority correctly notes that there has been no alteration in § 138-204's requirement that the Chief of Staff deny any application where the applicant proposes to limit the use of public streets and parks under certain conditions, CAMP has not challenged on appeal this attribute of the ordinance.