Gary A. ROSS, Plaintiff-Appellant-Cross-Appellee,

v.

CLAYTON COUNTY, GEORGIA, Department of Corrections, Marshall E. Camp, Warden, et al., Defendants-Appellees-Cross-Appellants.

No. 98-8763.

United States Court of Appeals,

Eleventh Circuit.

April 26, 1999.

Appeals from the United States District Court for the Northern District of Georgia. (No. 1:93-cv-2360-RLV), Robert L. Vining, Jr., Judge.

Before ANDERSON and BLACK, Circuit Judges, and STAFFORD[*], Senior District Judge.

ANDERSON, Circuit Judge:

Plaintiff Gary Ross, a correctional officer with Clayton County, appeals the district court's grant of summary judgment for Clayton County and the grant of summary judgment for the individual defendants in his civil rights action under 42 U.S.C. § 1983 regarding his demotion from the rank of sergeant. Ross makes two constitutional claims: (i) that the demotion violated his procedural due process rights; and (ii) that the demotion violated his First Amendment right of free association because it penalized him for living with an active probationer who happened to be his brother. The district court granted summary judgment to the individual defendants on the basis of qualified immunity, and to Clayton County because none of Ross's constitutional rights were violated. For the reasons that follow, we reject Ross's assertions of error and affirm the district court.

*FACTS*

In February 1992, Ross was hired by Clayton County as a correctional officer on a 12-month probationary, also known as "working test," basis. In October 1992, Ross's brother Andre moved into his apartment. Andre Ross was on probation for failure to pay child support. A Georgia Department of

---

[*]Honorable William Stafford, Senior U.S. District Judge for the Northern District of Florida, sitting by designation.

Corrections regulation, Ga. Comp. R. & Regs. r. 125-2-1-.07(d),[1] prohibits correctional officers from associating, corresponding, or doing business with active probationers unless they first receive special permission. On December 1, 1992, Andre was accused of abducting a woman and raping her at the apartment he shared with Ross. The police responded to the victim's 911 call by visiting the apartment and allegedly found Ross to be confrontational and belligerent in his interactions with them. Through this incident, Ross's association with Andre, previously unknown to his employer, came to light.[2] On December 3 (his first day at work following the December 1 incident), Ross was summoned to meet with Warden Camp and other supervisors. They claim that he was allowed to relate his side of the story at that time. After the meeting, Ross was demoted to a lower-ranking position, to wit, from his previous position of "Sergeant" to "Correctional Officer II" with an approximate loss of $3000 per year in salary. Written notice of the demotion explaining that it was for "conduct unbecoming an officer" was transmitted to Ross on December 4. Supplemental notice citing the DOC regulation regarding association with probationers and explaining the reasons for Ross's demotion in further detail was given on December 15, 1992. In February 1993, Ross appealed the demotion to the Clayton County Civil Service Board ("Board"). Although the controlling personnel regulation did not give probationary employees such as Ross a right to appeal such decisions, the Board apparently gave Ross an appeal gratuitously. The Board affirmed Warden Camp's decision to demote Ross.

Ross filed this action on October 15, 1993. The district court initially granted summary judgment on Ross's procedural due process claim and First Amendment claim in 1995. However, Ross appealed to this court and we remanded in an unpublished opinion on September 9, 1997, in order for further analysis to be conducted by the district court on certain issues. On remand, the district court again granted summary

---

[1]The regulation is applicable to employees of county correctional institutions through an administrative scheme whereby the Department of Corrections oversees the operation of those institutions.

[2]It is undisputed that Ross himself had nothing to do with the alleged rape.

2

judgment for the defendants. It is this most recent summary judgment order that is now before this court. In that order, the district court held that the individual defendants were entitled to qualified immunity on all claims. As for the merits (which had to be reached because Clayton County is a defendant), the court held that Ross had a property interest in his rank, but that he received ample pre-deprivation and post-deprivation process. The district court also held that the Georgia Department of Corrections rule forbidding correctional officers from living with active probationers did not violate the First Amendment.

*DISCUSSION*

We review the district court's grant of summary judgment *de novo,* with all facts and reasonable inferences therefrom reviewed in the light most favorable to the nonmoving party, i.e., Ross. *Hale v. Tallapoosa County,* 50 F.3d 1579, 1581 (11th Cir.1995). Summary judgment was due to be granted only if the forecast of evidence before the district court shows that there is no genuine issue as to any material fact and that the moving parties, i.e., the defendants, were entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We address the procedural due process and First Amendment issues *seriatim.*

A.      *Procedural Due Process*

There are two questions in the analysis of a procedural due process claim. Did the plaintiff have a property interest of which he was deprived by state action? If so, did the plaintiff receive sufficient process regarding that deprivation? Under this framework, the first step is to determine whether Ross had a property interest in his rank as a sergeant with Clayton County. A public employee has a property interest in employment if "existing rules or understandings that stem from an independent source such as state law create a legitimate claim of entitlement." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577-78, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). This determination requires examination of relevant state law. *Bishop v. Wood,* 426 U.S. 341, 344-45, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Generally, a public employee has a property interest in continued employment if state law or local ordinance in any way "limits the power of the appointing body to dismiss an employee." *Barnett v. Housing Auth. of City of Atlanta,* 707 F.2d 1571,

3

1577 (11th Cir.1983), *overruled on other grounds by McKinney v. Pate,* 20 F.3d 1550, 1558 (11th Cir.1994) (en banc), *cert. denied,* 513 U.S. 1110, 115 S.Ct. 898, 130 L.Ed.2d 783 (1995).[3]

Ross was not discharged, only demoted. However, we have held that an employee may have a property interest in his rank in addition to a property interest in continued employment itself. *See Winkler v. County of DeKalb,* 648 F.2d 411, 414 (5th Cir. Unit B 1981) (finding a protectable interest in rank where state law or regulations "establish[ ] the reasonable expectation that an employee will not be demoted to a position of vastly diminished responsibilities without cause"); *see also Hennigh v. City of Shawnee,* 155 F.3d 1249, 1254 (10th Cir.1998) (finding property interest in rank where "the statute or regulation places substantive restrictions on the discretion to demote an employee, such as providing that discipline may only be imposed for cause"); *Williams v. Kentucky,* 24 F.3d 1526, 1537-38 (6th Cir.) (same), *cert. denied,* 513 U.S. 947, 115 S.Ct. 358, 130 L.Ed.2d 312 (1994). Thus, although the majority of public employment procedural due process cases deal with situations where the employee was discharged, we proceed with our analysis with the understanding that a property interest in rank is at least theoretically possible and a demotion could trigger procedural due process obligations even though the employee continues to work for the employer.

Ross was only a probationary (also known as "working test") employee. Typically, probationary employees are thought to lack property interests in their employment because they are "at will" employees without a legitimate claim of entitlement to continued employment. *See, e.g., Burnley v. Thompson,* 524 F.2d 1233, 1240 (5th Cir.1975);[4] *Betts v. City of Edgewater,* 646 F.Supp. 1427, 1436 (M.D.Fla.1986). However, we cannot rely reflexively on the label "probationary" without looking behind that label to the controlling principles of state law and the substance of the status. Occasionally, employees who are classified as

---

[3]*McKinney* overruled an unrelated portion of *Barnett* dealing with whether a public employee could assert a substantive due process claim for being terminated for a pretextual reason.

[4]In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

"probationary" may nevertheless enjoy a property interest in their employment under state law. *See, e.g., Stapp v. Avoyelles Parish Sch. Bd.,* 545 F.2d 527, 532 (5th Cir.1977) (high school principal who was hired on a three-year probationary basis, but received letter from superintendent indicating that his work was good and his contract would be renewed on a permanent basis at the expiration of the three-year probationary term, enjoyed property interest in continued employment despite probationary status). Thus, we turn to an examination of the specific regulations of Clayton County pertaining to Ross's employment.

The following three Clayton County Civil Service Rules are relevant. First, Clayton County Civil Service Rule 9.102 provides that a probationary employee may be terminated without cause and without any right to appeal such termination. Second, Rule 8.301 provides that any employee (no distinction is made between permanent and probationary employees) may be demoted only for cause.[5] Third, the second sentence of Clayton County Civil Service Rule 8.303 provides that only permanent, not probationary employees, have the right to appeal a demotion.[6] These regulations set up a system where (i) probationary employees can be fired anytime with or without cause, and cannot appeal a termination; but (ii) probationary employees can be demoted only with cause; but (iii) probationary employees cannot appeal a demotion.

Under *Barnett,* the question is whether these regulations limit the power of the appointing body to demote a probationary employee. *Barnett,* 707 F.2d at 1577. We conclude that they do not. The Clayton County Civil Service Rules deny probationary employees, as opposed to permanent employees, the right to appeal a demotion. Final discretion is thus vested in the appointing authority's unilateral determination of

---

[5]The exact language of the pertinent portion of Rule 8.301 is that "a reduction of a permanent or working test employee to a position of lower class is a demotion. A lower class is one having a maximum salary lower than the maximum salary of the class in which the individual is paid. A demotion may be made for cause...." Clayton County Civil Service Rule 8.303 then specifies the grounds that constitute cause: "A permanent or working test employee may be demoted because of unfitness to perform assigned duties, negligence or inefficiency in performing duties, misconduct, insubordination or for other justifiable cause."

[6]The relevant language, following Rule 8.303's description of the grounds that constitute cause, says, "Permanent employees, however, have the right to appeal such action to the [Clayton County Civil Service] Board."

whether there was "cause" for demoting the employee. In *Blanton v. Griel Memorial Psychiatric Hospital,* 758 F.2d 1540 (11th Cir.1985), we analyzed an Alabama statute providing that while an employee was on probation, he could be discharged if " 'unable or unwilling to perform his duties satisfactorily.' " *Id.* at 1543 (quoting Ala.Code § 36-26-21(b)). The issue in *Blanton* was whether this provision gave rise to a protectable property interest for probationary employees in their jobs. Although the statute on its face seemed to limit the appointing authority's discretion to fire a probationary employee, we noted that in reality the appointing authority's decisions in this regard were not subject to review under state law. We therefore held that the probationary employee lacked a property interest. We reasoned as follows:

> The section governing probationary employees was clearly designed to offer a lesser expectation of continued employment than that offered to permanent employees. This is inherent in the idea of a "working test period." The discretion given the appointing authority under this section indicates that although he could discharge a probationary employee only for the stated reasons, the appointing authority is the person who determines if these reasons exist. This provision, giving directions for the appointing authority to use in exercising his judgment, amounts to providing for a discharge "at the will" of the appointing authority.

*Id.* at 1543-44 (citation omitted). We had reached a similar conclusion in *Edwards v. Brown,* 699 F.2d 1073 (11th Cir.1983), where the existence of a property interest depended on a city ordinance providing that police officers " 'shall serve during good behavior and efficient service, to be judged by the Commissioner [of Public Safety] or a designee.' " *Id.* at 1075 (quoting the Atlanta ordinance). The language, "to be judged by the Commissioner or a designee," "seem[ed] clearly to indicate the purpose of the city in its ordinance to give directions to the commissioner that, although he could discharge only for the stated reasons, he was the person in whom was placed the power to determine whether the reasons existed." *Id.* at 1077. As in *Blanton,* we equated this situation with "at will" employment for purposes of the determination whether a property interest existed. *See also Warren v. Crawford,* 927 F.2d 559, 563 (11th Cir.1991) (language providing that county administrator could dismiss department head " 'when, in his judgment, it is in the best interests of the County,' " created an at-will standard and foreclosed department head from having a property interest in his job).

6

In the instant case, the Clayton County Civil Service Rules provided that the warden could demote probationary employees such as Ross for "unfitness to perform assigned duties, negligence or inefficiency in performing duties, misconduct, insubordination or for other justifiable cause." Clayton County Service Rule 8.303. However, the determination of whether such grounds were present was exclusively for the warden, whose authority was unchecked because there was no appeal right for probationary employees. *Id.* We apply the reasoning of *Blanton* and *Edwards* and find that the regulations created something tantamount to an ability to demote at will, rather than a just cause standard.[7]

Thus, we hold that Ross lacked a property interest in his rank with Clayton County as a sergeant in its correctional institution.[8] Because there was no property interest, we need not decide whether the pre- and post-demotion process afforded to Ross would have been sufficient to meet the constitutional standard. The fact that Ross's constitutional due process rights were not violated also obviates the qualified immunity issue because all defendants were entitled to summary judgment on the merits.

B.     *First Amendment*

---

[7]We are aware that Clayton County, apparently ignoring the second sentence of Civil Service Rule 8.303, actually gave Ross an appeal to the Civil Service Board in this case. What exactly happened in this appeal is not clear to us on this record. While it is clear that the Civil Service Board affirmed the warden's decision, some evidence indicates that the Civil Service Board affirmed simply because it discovered that Ross, as a probationary employee, lacked an appeal right. Whatever the case may be, the voluntary, gratuitous extending of an appeal could not alter the plain language of the Civil Service Rules denying an appeal right and its impact on the property interest analysis.

[8]Our determination that Ross lacked a property interest in his rank is also supported by common sense. The concept of probationary or "working test" status is wholly inconsistent with giving employees the same procedural safeguards to which permanent employees are entitled. *See Blanton,* 758 F.2d at 1543. It is abundantly clear that Ross could have been fired without cause. *See* Clayton County Civil Service Rule 9.102. Although case law establishes that an employee can have a property interest in rank in addition to one in employment, *see, e.g., Winkler v. County of DeKalb,* 648 F.2d 411, 414 (5th Cir. Unit B 1981), none of these cases suggests that there can be a property interest in rank when there is none in the underlying employment itself. It would be anomalous to construe the personnel regulations in a way that would make it easier, insofar as constitutional protections are concerned, to fire an employee than to demote him. However, because of our reliance in this case on the non-appealability of the supervisor's decision and the *Blanton* and *Edwards* cases, we need not decide as a general matter whether there could be a property interest in rank where there is none in the underlying employment itself.

7

In addition to the procedural due process claim, Ross claims that his demotion violated the First Amendment.[9] He contends that he was penalized for living with his brother (who was an active probationer) in violation of his freedom of association. Clayton County responds that under the balancing test mandated by *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), the County's interests in internal efficiency and in employing correctional officers who act with discretion, good judgment, and in a manner that does not conflict with other correctional officers or law enforcement officers outweighed Ross's associational rights.

The Georgia Department of Corrections rule that Ross was charged with violating provides that "[e]mployees shall not, without the express written approval of the appropriate Deputy Commissioner, maintain personal association with ... known inmates, active probationers, or parolees." Ga. Comp. R. & Regs. r. 125-2-1-.07(d).[10] The parties agree that *Pickering* supplies the relevant framework and balancing test for deciding whether the County's application of Rule 125-2-1-.07(d) violated the First Amendment. *Pickering* requires the district court to balance the interest of the public employee in exercising his right of free speech or association against the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 568, 88 S.Ct. at 1734-35; *see also Shahar v. Bowers,* 114 F.3d 1097, 1112 (11th Cir.1997) (en banc) (Tjoflat, J., specially concurring) ("*Pickering* balancing, in the public employment context, involves the weighing of the employee's interest in the exercise

---

[9]The fact that Ross did not enjoy a property interest in his rank of which he was deprived by the demotion has no bearing on the First Amendment issue. Even at-will employees are protected against adverse employment action that is violative of constitutional rights such as those secured by the First Amendment. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 283-84, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977).

[10]We note that Ross was also accused of being belligerent and hostile toward the officers who investigated the December 1, 1992 incident at his apartment. While a public employer may escape liability by showing "that it would have reached the same decision as to [the adverse employment action] even in the absence of the protected conduct," *Mt. Healthy City Sch. Dist.,* 429 U.S. at 287, 97 S.Ct. at 576, we assume *arguendo* that Ross's cohabitation with his brother was the cause of the decision to demote him.

of a constitutional right against the employer's interest in maintaining an efficient workplace."), *cert. denied,* --- U.S. ----, 118 S.Ct. 693, 139 L.Ed.2d 638 (1998).

The defendants do not contest the existence of a First Amendment freedom of association right belonging to Ross,[11] and, as noted above, the parties agree that the *Pickering* balancing test is applicable. Under *Pickering* and its progeny, an employee's First Amendment rights are not absolute in the government employment context. In this case, defendants argue that Ross's rights are outweighed by Clayton County's interests.

We find Clayton County's interests in enforcing the Georgia Department of Corrections rule to be well-founded. In the context of law enforcement, there is a special need to employ persons who act with good judgment and avoid potential conflicts of interest. Personal associations with felons or active probationers could undermine appropriate objectives of a law enforcement agency. Ross contends that these interests are hypothetical and not entitled to much weight because Clayton County did not produce evidence that his living arrangement caused actual disruption to the correctional institution's operation. However, a requirement of a showing of actual disruption would be overly burdensome to the public employer. In an analogous context, we held that an employer's concerns can weigh into the *Pickering* balancing even though there is no actual showing that those concerns would manifest themselves in the employee's individual situation. *See Shahar v. Bowers,* 114 F.3d 1097 (11th Cir.1997) (en banc). The plaintiff in *Shahar* argued that her same-sex marriage would have entailed no conflict-of-interest problem with her employment in the attorney general's office because she would have handled only death penalty cases and not cases implicating the state's laws against homosexual acts. We rejected this argument, holding that "a particularized showing of interference with the provision of public services is not required." *Id.* at 1108.

---

[11] *See Roberts v. United States Jaycees,* 468 U.S. 609, 619, 104 S.Ct. 3244, 3250, 82 L.Ed.2d 462 (1984) (stating that the First Amendment right of free association encompasses "cohabitation with one's relatives") (citing *Moore v. East Cleveland,* 431 U.S. 494, 503-04, 97 S.Ct. 1932, 1937-38, 52 L.Ed.2d 531 (1977) (plurality opinion)); *Parks v. City of Warner Robins,* 43 F.3d 609, 615-16 (11th Cir.1995) (recognizing that police officer's right to marry falls under First Amendment freedom of association protection).

9

The case of *McCabe v. Sharrett,* 12 F.3d 1558 (11th Cir.1994), warrants discussion. In *McCabe,* a police chief's ex-secretary challenged her transfer to a less desirable position after she married a police officer under the chief's command. The plaintiff claimed that her right to marry whom she wanted was protected under the First Amendment and that the transfer impermissibly burdened that right. The court weighed the employee's First Amendment interest in the choice of marriage against the employer's asserted interest in the transfer, which was to ensure the confidentiality and objective handling of matters before the police chief (many of which matters directly involved personnel issues affecting the employee's husband). *Id.* at 1570-73. The court found that the balance tipped in favor of the employer. The police chief frequently handled sensitive matters and absolute loyalty on the part of his secretary was paramount. Moreover, the secretary would inevitably be exposed in the course of her regular duties to information that concerned subordinate employees including her husband. Thus the court concluded: "While it is clear that an employer's purely subjective fear of disruption is insufficient to outweigh an employee's exercise of her rights, it is also plain that Chief Sharrett's concern that McCabe's marriage would undermine her loyalty to him and thus the confidentiality of his office was reasonable and not merely subjective." *Id.* at 1572.

*McCabe* is analytically helpful because the respective interests of employer and employee are similar to those in the instant case. The employer's interest in both cases is in avoiding potential conflicts of interest between loyalty to the law enforcement employer and loyalty to someone in an off-duty, personal relationship. Likewise, the employee's interest in both cases is based in a personal and intimate relationship. *McCabe* 's holding that in the public employment context, the needs of law enforcement may sometimes outweigh a law enforcement officer's associational rights, speaks directly to the instant case.[12] *See also Shahar,* 114 F.3d at 1107-10 (holding that attorney general's interests in fostering a positive public image,

---

[12]The *Pickering* balance in one case is rarely precisely parallel to that in another. For example, in the instant case, it is arguable that the employer's interest in avoiding a conflict of interest or loyalty on the part of a correctional officer with respect to a non-inmate is less obvious than the employer's interest in *McCabe.* On the other hand, it is also arguable that the marriage interest of the employee in *McCabe* was stronger than Ross's interest in sharing an apartment with his probationer brother.

avoiding potential conflicts of interest, and promoting internal morale and departmental cohesiveness outweighed would-be employee's interest in maintaining marriage-like relationship with a homosexual partner).

In the instant case, the *Pickering* balance is tilted substantially in favor of Clayton County by the fact that the rule prohibiting association with probationers contains an exception whereby the employee may seek and obtain special permission from the appropriate deputy commissioner. This flexibility enhances the reasonableness of the rule, giving an employee an opportunity to seek an exception in circumstances where the employee's interests are strong and the employer's interests might be accommodated in some manner. It is undisputed that Ross never sought any such waiver or permission. Applying the *Pickering* balancing test, we hold that there was no violation of Ross's First Amendment rights.

### *CONCLUSION*

In conclusion, we hold that (i) Ross, not having a property interest in his rank, was not entitled to any procedural due process, and (ii) Ross's First Amendment associational rights were not violated. We have also considered Ross's state-law claims and find them to be without merit. The district court's judgment is

AFFIRMED.