[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-10963
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-20508-WMH


HARSH SHARMA,

Plaintiff - Appellant,

versus

DRUG ENFORCEMENT AGENCY,
UNITED STATES ATTORNEY GENERAL,
UNITED STATES MARSHALL SERVICE,
MIKE LNU,
DEA,
AMBER BAGINSKI,
TFO and others unknown individual
and official capacities,
U.S. ATTORNEY'S OFFICE,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 4, 2013)

Before MARCUS, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Harsh Sharma, proceeding pro se, appeals the district court's grant of the defendants' motion for summary judgment. Sharma initially brought suit in federal district court under 28 U.S.C. § 1983; however, he later amended his complaint, and alleged, under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971), constitutional violations in connection with the revocation of his Drug Enforcement Administration (DEA) registration. The defendants responded with a motion to dismiss, which the magistrate judge construed as a motion for summary judgment. The district court adopted the magistrate's report and recommendation, and granted summary judgment in favor of the defendants. On appeal, Sharma argues that the defendants revoked his DEA registration without providing him notice and a hearing, which amounted to a violation of his Fifth Amendment right to due process. After a thorough review of the record, we affirm.

## I. BACKGROUND

Sharma filed a pro se amended *Bivens* complaint against the DEA, the Attorney General, DEA Agent Amber Baginski, "Mike c/o DEA," and other unknown DEA employees in both their individual and official capacities, alleging violations of his rights under the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth

Amendments, and the Equal Protection Clause of the Fourteenth Amendment. He alleged that he was a DEA registrant for over 12 years and that, unbeknownst to him, the DEA revoked his registration on February 28, 2009, a year before it was scheduled to expire. He alleged that the DEA and its employees had conspired to terminate or revoke his license to possess, distribute, or dispense controlled substances without providing him with "actual meaningful notice" and an opportunity to be heard. Sharma further alleged that Baginski and "Mike" had falsely arrested him, and Baginski had committed perjury by stating that notice had been sent to him. He requested compensatory and punitive damages in the amount of $250 million.

The Attorney General and the DEA filed a motion to dismiss Sharma's complaint. They argued that the claims against the DEA and the official capacity claims against the individual defendants were barred by sovereign immunity. The *Bivens* claims against the individual defendants for their roles in allegedly denying Sharma notice prior to revocation of his DEA registration should be dismissed because there was a comprehensive statutory scheme that provides adequate remedial mechanisms for the alleged deprivation of Sharma's property without due process.

In support of its motion, the government provided the plea agreement from Sharma's criminal prosecution in the U.S. District Court for the Middle District of

Florida, pursuant to which Sharma pleaded guilty to one count of knowingly and intentionally distributing controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), and two counts of knowingly and intentionally possessing with intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D).  Sharma acknowledged that he was entering the agreement and pleading guilty intelligently, freely, and voluntarily, and he admitted that he was in fact guilty of the offenses for which he was pleading guilty. The plea agreement contained a factual basis for the plea, and Sharma admitted that the facts were true and that the government would have been able to prove those specific facts and others beyond a reasonable doubt had the case proceeded to trial.  Relevant to this appeal, the plea agreement set forth the following set of facts regarding the revocation of Sharma's medical license and DEA registration:

> In 1996, defendant Harsh Sharma ("Sharma") became licensed to practice medicine in Florida.  From October 19, 2004, through January 31, 2007, Sharma was also registered with the Florida Board of Medicine as a "dispensing practitioner," which authorized him to directly dispense prescription medication to his patients.  Because Sharma had a controlled substance Registration Number (#BS4579679) with the Drug Enforcement Administration ("DEA") during this time period, he was also permitted to use his Florida dispensing license to dispense certain types of controlled substances directly to his patients in Florida.  However, Sharma intentionally allowed his dispensing license to expire on January 31, 2007. Accordingly, as of February 1, 2007, Sharma was not permitted to directly dispense prescription medication—including controlled substances—for a fee to his patients.

On June 26, 2007, the Florida Board of Medicine permanently revoked Sharma's Florida medical license (#ME0071440) for violations of Florida Statutes §§ 458.331(1)(q), 458.331(1)(t), 458.331(1)(m), 458.331(1)(x), and 458.331(1)(g), in Department of Health case # 2005-08226.  Sharma received a copy of this Final Order of Revocation which was sent to his post office box—P.O. Box 11761, Naples, Florida, 34101.  After the Florida Board of Medicine revoked Sharma's medical license on June 26, 2007, Sharma no longer had the legal authority to possess controlled substances not intended for personal use.  On February 27, 2008, the DEA's Diversion Office rescinded Sharma's DEA Registration Number.

The government also submitted the judgment showing that Sharma was adjudicated guilty of the offenses and sentenced to a term of imprisonment of 60 months on each count, to run concurrently.

The matter was referred to a magistrate judge, who construed the defendants' motion as a motion for summary judgment.  The magistrate judge recommended that the defendants' motion be granted.  Sharma objected.  The district court overruled Sharma's objections, adopted the magistrate's report and recommendation, and granted summary judgment in favor of the defendants on all claims.

## II. STANDARD OF REVIEW

A district court's order granting summary judgment is reviewed de novo, "viewing all the evidence, and drawing all reasonable inferences, in favor of the non-moving party." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005) (per curiam).  "Summary judgment is appropriate 'if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990) (quoting Fed. R. Civ. P. 56). *Pro se* pleadings are held to a less stringent standard and liberally construed. *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008). We may affirm the district court's judgment on any ground that the record supports. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001).

## III. DISCUSSION

Here, Sharma brought suit against the defendants, who are federal officials, in both their official and individual capacities. As an initial matter, *Bivens* only applies to claims against federal officers in their individual capacities; it does not create a cause of action for federal officers sued in their official capacities. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69–71, 122 S. Ct. 515, 521–22 (2001). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit," and "[t]he terms of the federal government's consent to be sued in any court define that court's jurisdiction to entertain the suit." *JBP Acquisitions, LP v. U.S. ex rel. F.D.I.C.*, 224 F.3d 1260, 1263 (11th Cir. 2000) (internal quotation marks omitted). Summary judgment, therefore, was appropriate as to Sharma's claims against the defendants in their official capacities.

6

As stated, however, Sharma also brought suit againt the defendants in their individual capacities, alleging violations of his Fifth Amendment due process rights.  The Supreme Court has allowed *Bivens* actions against defendants in their individual capacities for violations of the Due Process Clause of the Fifth Amendment.  *See Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264 (1979).  As an affirmative defense, however, "qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Andujar v. Rodriguez*, 486 F.3d 1199, 1202 (11th Cir. 2007) (internal quotation marks omitted).  To overcome qualified immunity, Sharma must show that: (1) the defendants violated a constitutional right; and (2) the right was clearly established at the time of the alleged violation. *See id.* at 1202–03.

Sharma argues that his Fifth Amendment due process rights were violated. The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. Amend. V.  When appropriate, we will review a procedural due process claim by first determining whether the plaintiff had a protected liberty or property interest, to which he was entitled, that was infringed by government action. *Ross v. Clayton County, Ga.*, 173 F.3d 1305, 1307 (11th Cir. 1999) (analyzing procedural due process under the

7

Fourteenth Amendment); *see Dusenbery v. United States*, 534 U.S. 161, 167, 122

S. Ct. 694, 699 (2002) (stating that the Fourteenth Amendment's Due Process

Clause and Fifth Amendment's Due Process Clause prohibit the same activity,

with the Fifth simply applying to federal officials, rather than state).  The Supreme

Court has held that the ability to practice one's profession may be a liberty or

property interest protected by the Due Process Clause.  *Schware v. Bd. of Bar*

*Exam'rs of the State of New Mexico*, 353 U.S. 232, 238–39, 77 S. Ct. 752, 756

(1957) ("A State cannot exclude a person from the practice of law or from any

other occupation in a manner or for reasons that contravene the Due Process

[Clause]").

If we determine that a deprivation of a protected interest took place, then we

must determine if the individuals received sufficient process regarding that

deprivation.  *Ross*, 173 F.3d at 1307.  The essence of due process is an opportunity

to be heard at a meaningful time and in a meaningful way.  *Reams v. Irvin*, 561

F.3d 1258, 1263 (11th Cir. 2009).  Thus, even where a governmental entity fails to

follows its own regulations providing for procedural safeguards, it is not a denial

of due process if the individual was provided with adequate notice such that his

rights were not prejudiced.  *See Gov't of the Canal Zone v. Brooks*, 427 F.2d 346,

347–48 (5th Cir. 1970) (per curiam).[1]  Further, there is no due process violation where the government has made available a post-deprivation remedy sufficient to correct an alleged procedural deprivation.  *Cotton v. Jackson*, 216 F.3d 1328, 1331 n.2 (11th Cir. 2000) (per curiam).  In the instant matter, Sharma had a post-deprivation remedy available.

The Controlled Substances Act (CSA), Title II of the Comprehensive Drug Abuse Prevention and Control Act, was designed by Congress as a "closed regulatory system making it unlawful to manufacture, distribute, dispense, or possess any controlled substance except in a manner authorized by the CSA." *Gonzales v. Raich*, 545 U.S. 1, 13, 125 S. Ct. 2195, 2203 (2005).  The Act authorizes the Attorney General to license manufacturers, distributers, and dispensers to handle controlled substances.  21 U.S.C. § 823.  Accordingly, physicians who dispense prescription medications that are controlled substances are required to obtain proper registration from the Attorney General.  *See* 21 U.S.C. §§ 822(a), 823(f); *Gonzales v. Oregon*, 546 U.S. 243, 250–51, 126 S. Ct. 904, 912 (2006).

Under the CSA, the Attorney General has the authority to deny, revoke, or suspend registrations.  21 U.S.C. § 824.  However, the Attorney General has

---

[1] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (holding that decisions in the Fifth Circuit Court of Appeals "shall be binding as precedent in the Eleventh Circuit, for this court, the district courts, and the bankruptcy courts in the circuit").

delegated this authority to the DEA. *See United States v. Lippner*, 676 F.2d 456, 460 (11th Cir. 1982) (holding that the functions vested in the Attorney General by the Comprehensive Drug Abuse Prevention Act were properly delegated to the DEA). In the event that an existing registration is proposed for revocation, the DEA is required to serve an "order to show cause" on the registrant and give the registrant an opportunity for a hearing before an Administrative Law Judge in order to contest the proposed action. *See* 21 U.S.C. § 824(c). Pursuant to 21 U.S.C. § 877, federal appellate courts have jurisdiction to review the Attorney General's decision regarding revocation of a physician's DEA registration.

Summary judgment was thus appropriate as to Sharma's claims against the defendants in their individual capacities because Sharma has failed to establish a violation of his constitutional due process rights, as he was afforded adequate notice and an opportunity to be heard, as well as an opportunity to appeal the revocation of his DEA registration, which he did not. *See Gov't of the Canal Zone*, 427 F.2d at 347–48; *Cotton*, 216 F.3d at 1331 n.2. In Sharma's plea agreement in his criminal case, he admitted that he "intentionally" allowed his registration to expire on January 31, 2007, and "accordingly," he was not permitted to dispense prescription medications. He further conceded that he knew that his DEA registration was rescinded on February 27, 2008. Since, by his own admission, Sharma knew that his DEA registration had expired, his constitutional due process

10

rights were not violated by an alleged lack of notice as to the rescission of the registration. *See Gov't of the Canal Zone*, 427 F.2d at 347–48 (holding that there is not a denial of due process if the individual was provided with adequate notice such that his rights were not prejudiced). Sharma was given sufficient notice and an opportunity to be heard; he cannot show a violation of his due process rights or any other clearly established constitutional right. Moreover, because the plea agreement conclusively established that Sharma was aware of the DEA's actions, there is no evidence that he could submit that would show that he was not afforded sufficient notice. Accordingly, the defendants are entitled to qualified immunity on the claims against them in their individual capacities.

Additionally, although the district court granted the motion on other grounds, the government correctly argued that Sharma's *Bivens* claims against the individual defendants could not proceed given the existence of an adequate alternative remedy. *See Hardison v. Cohen*, 375 F.3d 1262, 1264 (11th Cir. 2004); *Lucas*, 257 F.3d at 1256 (holding that this Court may affirm the district court's judgment on any ground that the record supports). The CSA is a "closed regulatory system" that provides an alternative means of redress for the actions of which Sharma complains. *See Gonzales*, 541 U.S. at 13, 125 S. Ct. at 2203. Thus, Sharma should have contested the revocation of his DEA registration by appealing to this court, pursuant to the scheme provided by the CSA. *See* 21 U.S.C. § 877.

11

Because Sharma had an alternative means of obtaining redress, we decline to recognize a cause of action under *Bivens*.  *See Hardison*, 375 F.3d at 1264. Accordingly, the district court's order granting defendants' motion for summary judgment is affirmed.

**AFFIRMED.**