[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-14967
Non-Argument Calendar

_____

D.C. Docket No. 5:12-cv-02315-IPJ

WENDOLYN LAFLEUR,

Plaintiff - Appellant,

versus

DR. ANDREW HUGINE, JR., et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 23, 2014)

Before WILLIAM PRYOR, MARTIN and JORDAN, Circuit Judges.

PER CURIAM:

Dr. Wendolyn LaFleur, proceeding *pro se*, filed suit against officials of the

Alabama Agricultural and Mechanical University ("Alabama A&M") asserting

claims for declaratory judgment (Count I), race discrimination under 42 U.S.C. §

2000e and 42 U.S.C. § 1981 (Count II), a petition for writ of mandamus (Count III), tortious interference with contractual relations (Count IV), retaliation under the False Claims Act (Count V), retaliation and interference under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* (Count VI), and deprivation of due process under 42 U.S.C. § 1983 (Count VII).  With the benefit of counsel, Dr. LaFleur subsequently stipulated to the dismissal of all claims asserted in the complaint except for her claims under the FMLA and § 1983.  She also voluntarily dismissed all claims against Larry Powers, Chasidy Privett, and Dr. Chris I. Enyinda.

What remained were her claims seeking prospective relief under the FMLA and § 1983 against (1) Dr. Andrew Hugine, Jr., in his official capacity as President of Alabama A&M; (2) Dr. Daniel Wims, in his official capacity as Provost of Alabama A&M; (3) Dr. Tammy Range Alexander, in her official capacity as Director of the Regional Inservice Center at Alabama A&M; (4) Cheryl Johnson, in her official capacity as Director of Human Resources of Alabama A&M; and (5) Governor Robert Bentley, Odysseus M. Lanier, Lucien B. Blankenship, Norman D. Hill, John O. Hudson, III, Chris Robinson, James Montgomery, Richard Reynolds, Andre Taylor, Jerome Williams, and Velma Tribue, all in their official capacities as members of the Board of Trustees for Alabama A&M.  Also remaining was a claim for monetary damages against Dr. Hugine, Dr. Wims, Dr.

2

Alexander, and Ms. Johnson in their individual capacities for the violation of Dr. LaFleur's due process rights under § 1983.

On appeal, proceeding *pro se*, Dr. LaFleur challenges the district court's grant of summary judgment in favor of the defendants on her FMLA retaliation and interference claims and on her § 1983 due process claim. Dr. LaFleur also attempts to reassert the now-dismissed claims in Counts I through V of her complaint and the claims against Mr. Powers, Ms. Privett, and Dr. Enyinda. Additionally, Dr. LaFleur raises, for the first time on appeal, a number of new claims. Having carefully reviewed the record and the parties' briefs, we affirm.

## I

We write only for the parties, and presume their knowledge of the underlying record. We therefore summarize only what is necessary to explain our decision.

## A

Alabama A&M University and the Alabama Department of Education entered into a Memorandum of Agreement on September 1, 2010, whereby Alabama A&M agreed to deliver the Alabama Technology in Motion ("TIM") Program on-site and online at participating K-through-12 schools. The agreement stated that from October 1, 2010, through September 30, 2011, a Technology in Motion Trainer employed by Alabama A&M's Regional Inservice Center would

be tasked with (1) identifying schools to conduct training on the use of technology in the classroom and (2) then providing on-site training. Additionally, the agreement noted that the TIM Trainer would be domiciled at the University Inservice Center, and identified Dr. LaFleur as the TIM Trainer who would provide the services. Cheri Hayes, the TIM Administrator, was Dr. LaFleur's supervisor.

On August 22, 2011, Dr. LaFleur requested medical leave from August 23, 2011, through September 6, 2011, due to job-related stress. Alabama A&M granted the leave she requested. On September 12, 2011, after returning from her FMLA leave, Dr. LaFleur received a letter notifying her that her employment with Alabama A&M was terminated effective September 30, 2011 and that, although she was no longer required to report to work, she would be paid through that date. Dr. LaFleur alleged that her termination violated her FMLA and due process rights.

**B**

On September 7, 2011, Dr. Tammy Alexander, the Regional Inservice Center Director, wrote to Dr. Andrew Hugine, Jr., President of Alabama A&M, seeking permission to terminate Dr. LaFleur. Dr. Alexander testified that despite seeking permission to terminate Dr. LaFleur in September of 2011, she made her

4

decision in April of 2011, and was a result of Dr. LaFleur's poor job performance, and not her decision to take FMLA leave.

Dr. Alexander explained that she decided to terminate Dr. LaFleur's employment because she was not "out in the field" enough to "move the [Technology in Motion] program forward" and because she was "inflexible" concerning new procedures that Dr. Alexander and Alabama A&M had implemented. Specifically, she explained that in May of 2010, during Dr. LaFleur's yearly performance evaluation, Dr. Alexander raised concerns regarding Dr. LaFleur's consistency with documenting her time in the office. During the following year's performance evaluation, Dr. Alexander again raised concerns about Dr. LaFleur's lack of flexibility with Alabama A&M's new travel policy, which had been implemented in December of 2010. Dr. Alexander testified that Dr. LaFleur had issues with the new travel policy, which required pre-approval for travel, despite she and Ms. Hayes meeting with Dr. LaFleur in January of 2011, and devising an approval procedure which was designed to lessen the impact of the new policy on Dr. LaFleur's job. Yet, Dr. LaFleur's visits to local area schools declined.

Notably, Dr. LaFleur acknowledged that she knew that Dr. Alexander was taking steps to terminate her employment as early as March of 2010 because Dr. Alexander raised concerns regarding Dr. LaFleur working from home when she

5

was supposed to work from the University Inservice Center.  Dr. LaFleur also conceded that she was a staff employee at Alabama A&M, and pursuant to the staff handbook, which Dr. LaFleur acknowledged receiving, was an "at-will" employee subject to termination without cause upon three-week notice.

## II

We review the grant of summary judgment *de novo*, applying the same standard as the district court.  *See Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1256 (11th Cir. 2003).  Despite the fact that *pro se* pleadings will be construed liberally, issues not briefed on appeal are deemed abandoned.  *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).  A mere passing reference to an issue in an appellant's brief is not sufficient to raise the issue on appeal.  *See Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989).  Additionally, "an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court."  *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

## III

On appeal, Dr. LaFleur attempts to revive most of the now-dismissed claims in Counts I through V of her complaint, as well as the claims against Mr. Powers, Ms. Privett, and Dr. Enyinda.  We, however, do not have jurisdiction to review the order dismissing those claims and parties because it was entered in response to Dr.

6

LaFleur's stipulation stating that she was only pursuing the FMLA and § 1983 due process claims, and as such was voluntarily dismissing all other claims in her complaint and all claims against Mr. Powers, Ms. Privett, and Dr. Enyinda. *See Druhan v. Am. Mut.*, 166 F.3d 1324, 1326 (11th Cir. 1999) (no appellate jurisdiction to review a final judgment that resulted from a voluntary dismissal with prejudice).

Dr. LaFleur also attempts to raise, for the first time on appeal, a host of new claims (some of which are similar to the claims she voluntarily dismissed).[1] Because those claims were not presented to the district court, Ms. LaFleur may not raise them now on appeal. *See, e.g.*, *Access Now, Inc.*, 385 F.3d at 1331.

**IV**

"The FMLA grants an eligible employee the right to take up to 12 workweeks of unpaid leave annually for any one or more of several reasons, including '[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Hurley v. Kent of*

---

[1] Dr. LaFleur's new claims and allegations of wrongdoing include: (1) breach of contract; (2) that the Alabama A&M employee handbook contained policies that illegally discriminated between staff and faculty by conferring rights of tenure to one group and not the other; (3) that staff employees were denied their right to work in an environment free from discrimination, hostility, harassment, humiliation, intimidation, and retaliation; (4) that Alabama A&M violated her First Amendment rights by retaliating against her as a "whistleblower"; (5) a demand for declaratory judgment under 28 U.S.C. § 2201 to redress her claims of conspiracy to retaliate, false statements in performance reviews, discrimination and harassment in violation of Title VII and § 1983; (6) a claim of discrimination, based on her race, age, sex, and color, and a claim of retaliation under Title VII, § 1983, and the Equal Protection Clause; and (7) retaliation for complaining of a hostile work environment.

7

*Naples, Inc.*, 746 F.3d 1161, 1166 (11th Cir. 2014) (citing 29 U.S.C. § 2612(a)(1)(D)).    The FMLA prohibits an employer from interfering with an employee's right to take FMLA leave and from retaliating against an employee for taking FMLA leave.  *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006).

As an initial matter, the district court concluded that Dr. LaFleur abandoned her FMLA retaliation claim because she explicitly stated that she was not going to respond to the defendants' arguments regarding that claim.  "[F]ailure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."  *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000).  Thus, the district court did not err in failing to address that claim, and we will not consider it on appeal.  *See id.  See also Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1284-85 (11th Cir. 2003) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

To establish a claim for FMLA interference, "an employee need only demonstrate by a preponderance of the evidence that [she] was entitled to the benefit denied," and not that the employer intended to deny the benefit.  *Hurlbert*, 439 F.3d at 1293.  When an employee returns from FMLA leave, that employee has the right "to be restored by the employer to the position of employment held by

8

the employee when the leave commenced or to an equivalent position." *Jarvela v. Crete Carrier Corp.*, 754 F.3d 1283, 1289 (11th Cir. 2014) (citing 29 U.S.C. § 2614(a)(1)(A)). "If an employer demonstrates that it would have discharged an employee for a reason wholly unrelated to the FMLA leave, the employer is not liable under the FMLA for damages for failure to reinstate." *Spakes v. Broward Cnty. Sheriff's Office*, 631 F.3d 1307, 1310 (11th Cir. 2011) (citation and internal quotation marks omitted).

Dr. LaFleur also arguably abandoned her FMLA interference claim because she only makes a passing reference to that claim in her brief, without "elaborate[ing] . . . arguments on the merits." *Greenbriar, Ltd.*, 881 F.2d at 1573 n.6. *See also Timson*, 518 F.3d at 874. Even assuming, however, that Dr. LaFleur adequately raised the issue of FMLA interference on appeal, the undisputed evidence showed that the decision to terminate Dr. LaFleur's employment was made prior to Dr. LaFleur requesting and taking FMLA leave and that it arose because of Dr. LaFleur's purportedly poor job performance. Accordingly, the district court did not err in granting summary judgment in favor of the defendants on Dr. LaFleur's FMLA interference claim.

## V

Dr. LaFleur argues that the defendants violated her due process rights by terminating her employment without a pre-termination hearing. The viability of

9

Dr. LaFleur's due process claims depends on whether she had a "property right in continued employment.  If [she] did, the State could not deprive [her] of this property without due process." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (citations omitted).  The only process due, however, is procedural. *See Harris v. Bd. of Educ. of the City of Atlanta*, 105 F.3d 591, 596 (11th Cir. 1997) (explaining that governmental deprivation of a public employee's state-created property interest does not state a claim for violation of substantive due process right).  Even "[w]hen a state procedure is inadequate, no procedural due process right has been violated unless and until the state fails to remedy that inadequacy." *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994).  "Therefore, a plaintiff does not state a claim cognizable under 42 U.S.C. § 1983 unless and until the state refuses to make available a means to remedy the alleged procedural deprivation." *Harris*, 105 F.3d at 596 (citing *McKinney*, 20 F.3d at 1563).

When analyzing a claim of procedural due process, we address two questions: (1) whether the plaintiff had a property interest of which she was deprived by state action; and (2) if so, whether she received sufficient process concerning that deprivation. *See Ross v. Clayton Cnty., Ga.*, 173 F.3d 1305, 1307 (11th Cir. 1999).  "A public employee has a property interest in employment if existing rules or understandings that stem from an independent source such as state law create a legitimate claim of entitlement," and this determination "requires

10

examination of relevant state law." *Id.* (citations and internal quotation marks omitted). An interest in continued employment may be created if a "state law or local ordinance in any way limits the power of the appointing body to dismiss an employee." *Id.* (citation and internal quotation marks omitted).

Employment in Alabama "is terminable at will by either party for any reason unless there is an express and specific contract for lifetime employment or employment for a specific duration." *Howard v. Wolff Broad. Corp.*, 611 So. 2d 307, 310 (Ala. 1992). "At-will" employment may be terminated "with or without cause or justification," and employees "bear a heavy burden of proof to establish that an employment relationship is other than 'at will.'" *Id.* at 310-11 (citation and some internal quotation marks omitted). Because an at-will employee does not have a property interest in continued employment, she is "not entitled to procedural due process in connection with her termination." *Adams v. Bainbridge-Decatur Cnty. Hosp. Auth.*, 888 F.2d 1356, 1366 (11th Cir. 1989).

The evidence presented showed that Dr. LaFleur did not have a basis to claim a property interest in her continued employment because she was an at-will employee, and, thus, was not entitled to procedural due process in connection with her termination. Accordingly, the district court did not err in granting summary

11

judgment to the defendants' on Dr. LaFleur's § 1983 due process claim.[2]

## VI

For the foregoing reasons, the district court's grant of summary judgment is affirmed.

**AFFIRMED.**

---

[2] We are not persuaded by Dr. LaFleur's argument that she was a contract employee based on the Memorandum of Agreement between Alabama A&M and the Alabama Department of Education.  Even if Dr. LaFleur could be considered a contract employee based on that document—to which she was not a party—the Agreement expired on September 30, 2011.  Dr. LaFleur cannot claim a right to continued employment based on a contract that expired on the same day as her employment ended.  Under Alabama law, absent a valid employment contract, employment is at-will.  As a result, there can be no protected property interest in continued employment.  *See Howard*, 611 So. 2d at 310; *Selby v. Quartrol Corp.*, 514 So. 2d 1294, 1295 (Ala. 1987).  Without a "legitimate claim of entitlement" past September 30, 2011, Dr. LaFleur was not entitled to a pre-termination hearing.  *See Hatcher v. Bd. of Pub. Educ. & Orphanage for Bibb Cnty.*, 809 F.2d 1546, 1551 (11th Cir. 1987); *Howard*, 611 So. 2d at 310; *Selby*, 514 So. 2d at 1295.